EMILY J. SHAY, RESPONDENT, *v.* THE NATIONAL BENEFIT SOCIETY OF THE CITY OF NEW YORK, APPELLANT.

*Insurance policy — waiver of a forfeiture thereof because of a failure to pay an assessment — sending of a second notice after default under a prior one — effect thereof.*

An insurance policy was issued by a company, by whose rules it was provided: "The form of notice to, and process of collection from, each of the members of the assessment above named shall be as follows: A notice shall be sent announcing such assessment and the number thereof to the last post-office given to the society by each member, and if the assessment is not received within thirty days from the mailing of the said notice, it shall be accepted and taken as sufficient evidence that the party has decided to terminate his connection with the society, which connection shall thereupon terminate, and the party's contract

with the society shall lapse and be void, but said party may again renew his connection with the society by a new contract made in the same manner as the first, or for valid reasons to the officers of the society, such as a failure to receive notice of the assessment, he may be reinstated by paying the assessment arrearages."

A notice to pay a death rate for the death of one of its members was mailed to a member, James Shay, on May 31, 1886. The sum mentioned in said notice was not paid within the month of June by James Shay, or by anybody else on his behalf. A similar notice was again mailed to James Shay on July fifth, and payment of the amount therein mentioned was made on the 21st day of July, 1886, but not until after the death of James Shay, the insured, which fact was, however, known to the company when such payment was made.

*Held,* that while, under the rules of the company, it was competent for the defendant to treat the failure to pay within the first thirty days as sufficient evidence that the party had decided to terminate his connection with the company, that, in this case, the sending of a second notice necessarily involved a waiver of any previous forfeiture based upon a failure to pay within the time previously fixed, that, consequently, the payment made July twenty-first thereunder continued the policy in force as against the defendant.

MOTION by the defendant for a new trial on a case and exceptions, ordered to be heard at the General Term in the first instance, after a verdict directed at the Ontario Circuit, on a trial on November 12, 1888, in favor of the plaintiff for the recovery upon two policies of life insurance of $5,000 each, issued by the defendant to James Shay on the 14th of September, 1885, for the benefit of the plaintiff.

*E. G. Lapham,* for the plaintiff.

*William H. Smith,* for the defendant.

MACOMBER, J.:

One of the rules (the third) of the company, and under which the assured received the policies, is as follows: " The form of notice to and process of collection from each of the members of the assessment above named shall be as follows: A notice shall be sent announcing such assessment and the number thereof to the last post-office given to the society by each member, and if the assessment is not received within thirty days from the mailing of the said notice, it shall be accepted and taken as sufficient evidence that the party has decided to terminate his connection with the society, which connec-

tion shall thereupon terminate; and the party's contract with the society shall lapse and be void, but said party may again renew his connection with the society by a new contract made in the same manner as the first; or, for valid reasons to the officers of the society (such as a failure to receive notice of the assessment), he may be reinstated by paying assessment arrearages."

On the 31st day of May, 1886, a notice to pay a death rate to the company for the death of one of the members was mailed to James Shay. It was dated June 1, 1886. It was therein stated that the assessment was made "to provide for this claim, your assessment of $16.80 is now due and payable within thirty days from the date hereof." Annexed to the notice was what is called a coupon, which was a summary statement of the number of the policy and the name of the insured, and the amount and the time of the expiration for the payment of the assessment, which was there stated to be July 1, 1886. This sum was not paid within the month of June by the deceased, or by anybody else in his behalf. The same blank notice, filled up in the same manner, was again mailed to the deceased July fifth or sixth. This was marked in conspicuous letters "second notice."

When this last or second notice, so-called, was sent to the deceased, the time for the payment, by the terms of the notice itself, had passed by about five or six days. If any forfeiture had been worked by the failure to pay the assessment, it was before the sending of such last notice. Under the phraseology of the third provision or rule above quoted, it seems to us that the company by sending out a second notice intended to, and did, in fact, waive any forfeiture which had been incurred by the assured by reason of his failure to pay the assessment on or before July first. This act of waiver was not done by any subordinate officer of the company, but by the company itself, through its treasurer. Under the rules of the company, it was, doubtless, competent for the defendant to treat the failure to pay within the previous thirty days, sufficient evidence that the party had decided to terminate his connection with the society, and for the company on its part to take the position that the policy had lapsed and was void. It is there provided that the "party may again renew his connection with the society by a new contract made in the same manner as the first; or valid

reasons to the officers of the society, such as a failure to receive notice of an assessment, he may be reinstated by paying the assessment arrearages." Here was, therefore, an invitation to the deceased, necessarily involving a waiver of a previous forfeiture, to pay within the usual time after the service of such notice, the assessment which was claimed from him; and there was impliedly a promise on the part of the company that if such payment was made within thirty days from the time of the reception of the second notice there should be no forfeiture. Payment was made by express within that period, namely, on the 21st day of July, 1886, and was received by the defendant on the twenty-second of that month, but not until after the death of the insured. A receipt in due form was given for such payment and was written upon the face of the second notice.

Subsequently to this payment the company undertook to retire from the obligation which it assumed by receiving unquestioned the money and giving a receipt therefor; to repudiate such payment and to insist upon the previous opportunity to work a forfeiture. In this respect, also, the action of the defendant cannot be upheld. The officers, at the time of the receipt of the money, knew that James Shay was dead. On the 22d day of July, 1886, the defendant returned by express, addressed to L. L. Shay, a daughter of the deceased, money orders for sixteen dollars and eighty cents and seven dollars and eighty cents for the assessments, alleging as follows: "The assessments were due and payable on or before July first, and not having been paid then the certificates lapsed and became void by the conditions therein, and reinstatement can only be made under the terms of our certificates and by-laws upon satisfactory evidence of good health at the time or by new contract made in the same manner as at first. Certificate of health must accompany remittances." This communication contains no intimation that the clerk, who had been furnished proper receipts, had no power or right to receive and to retain the assessments, on the contrary, it places the rights of the company upon a ground utterly untenable with respect to the third rule above quoted. Under these circumstances, there being no request on the part of the defendant to go to the jury, but both sides participating in a motion for a direction of a verdict, respectively, we think the direction of the trial court

was correct, and the judgment should be granted to the plaintiff upon the verdict as directed, with costs.

BARKER, P. J., and DWIGHT, J., concurred.

Motion for new trial denied, with costs. Judgment ordered for plaintiff on the verdict.