### GRIESA et al. v. MASSACHUSETTS BENEFIT ASS'N.

*(Supreme Court, General Term, Fifth Department.    June, 1891.)*

1. MUTUAL BENEFIT INSURANCE—REINSTATEMENT—CONDITIONS.

    After a member of a mutual benefit association had forfeited her membership by failure to pay an assessment within the time required by the certificate, the assessment was paid, and a receipt given therefor, which recited that the payment was made and received and the receipt given by the association, and received by the member, on condition that such member "is now in good health, and free from all diseases, infirmities, or weaknesses." It appeared that the member's health had begun to be affected about a year before the forfeiture by the natural decline of age, which resulted in her death soon after the receipt was given, but that she was subject to no disease, and that her only infirmities were those natural to old age. *Held,* that the evidence failed to show that the condition of the receipt was not fulfilled.

2. SAME—WAIVER OF FORFEITURE.

    A member of a mutual benefit association failed to pay an assessment within the time required by her certificate of membership, which by its terms was to become void in the event of such failure to pay, but which might be reinstated by the officers of the association for reasons satisfactory to them, and on such conditions as they might require.    A few days after the expiration of the time limited the member paid the assessment, and a receipt therefor was given, which declared that the payment was received on condition that the member was at the time "in good health, and free from all diseases, infirmities, and weaknesses," and that no subsequent payment to the association on the certificate shall "impair, waive, alter, or change any of the conditions of this receipt or of said certificate." Notices of subsequent assessments were given, which declared that payment of such assessments would be received only on the agreement that no condition on "which any previous payment had been received is waived thereby," and these assessments were paid. Afterwards a notice of an annual assessment to pay the expenses of the association was sent to the member, which recited that "the sending of this notice shall not be held to waive any forfeiture or lapse of membership, if previous assessments remain unpaid." *Held* that, though the condition of the first receipt was not fulfilled, the subsequent dealings between the parties showed a waiver of the forfeiture for non-payment of the assessment within the required time.

3. CORPORATIONS—ACTIONS—ULTRA VIRES.

    A corporation cannot avail itself of the defense of *ultra vires,* unless it is pleaded.

4. FOREIGN INSURANCE COMPANIES—RETALIATORY LAWS.

    Laws N. Y. 1883, c. 175, which provides that, where any other state shall impose any obligation on co-operative life insurance companies of New York doing business in such other states, "the like obligations are hereby imposed on similar corporations of such other state transacting business in this state," does not impose on a Massachusetts corporation doing business in New York the prohibition of St. Mass. 1885, c. 183, § 10, that no policy or certificate shall be issued on "the life of any person more than 60 years of age," since it is the obligation, and not the prohibitions, imposed on foreign companies by the retaliatory act of 1883.

**5. SAME—ACTION ON POLICY—WHERE BROUGHT.**

A cause of action on a policy of life insurance issued by a foreign corporation to a resident of New York, who dies in that state, arises in New York; within Code Civil Proc. N. Y. § 1780, which provides that "an action against a foreign corporation may be maintained * * * by a non-resident, * * * where the cause of action arose within the state."

Appeal from circuit court, Steuben county.

Action by Charles A. Griesa and others against the Massachusetts Benefit Association. From a judgment entered on the findings and decision of the court, a jury being waived, defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER, J.

*J. K. Hayward,* for appellant.    *J. F. Parkhurst,* for respondents.

DWIGHT, P. J.    The action was on a policy of life insurance issued to Mrs. Henrietta Griesa, of North Cohocton, Steuben county, in this state, for $1,000, payable, in case of her death, to the plaintiffs, her children. The defendant is a foreign corporation, organized under the laws of the state of Massachusetts, and having its principal office at Boston, but doing business in this state. This policy was a reinsurance, issued October 5, 1888, upon the surrender of a policy of $2,500, issued to the insured by the Life Benefit Society of Rochester, N. Y., in the year 1882. The insured was 70 years old when she received the policy of the defendant, and 62 years old when she effected the original insurance in the Rochester society. Notice of a "mortuary call" or assessment of $7.50 was mailed to the insured May 1, 1889, payable June 1st, which was not paid until June 5th. A provision in the policy in reference to such assessments was as follows: "If the assessment is not received within 30 days from the mailing of the notice, it shall be accepted and taken as sufficient evidence that the party has decided to terminate his connection with the association, which connection shall thereupon terminate, and the party's contract with the association shall lapse and be void, and all rights thereunder be forfeited to the association; but said party may again renew his connection with the association by a new contract, made in the same manner as at first; or he may be reinstated by the officers of the association for reasons satisfactory to them, and upon such conditions as they may require." The check sent in payment of the assessment, above mentioned, was retained and collected by the defendant, and a receipt therefor was returned to the insured, in the following terms:

"MASSACHUSETTS BENEFIT ASSOCIATION, TREMONT TEMPLE, BOSTON, MASS.

"Received of Mrs. H. A. Griesa, $7.50, on this 5th day of June, 1889, for mortuary call or assessment No. 54, on policy No. 20,500, which amount became due and payable before this day, (thirty days allowed for the payment thereof having expired.) For non-payment of the assessment on or before the date it became due, said certificate or policy lapsed or expired, and, the above payment being tendered after the same became due and payable, said payment is made and received, and this receipt given by the association and accepted by the member, and every person having or acquiring any interest in said policy, upon the following conditions, and not otherwise: *First.* That said member is now living and of temperate habits, and is now in good health and free from all diseases, infirmities, or weaknesses; otherwise said payment, and this receipt and said policy, shall be and is null and void. *Second.* The receipt and acceptance of the above sum by the association shall not be held to waive forfeiture or expiration of membership, or to reinstate membership, or create any liability on the part of the association under said certificate, except upon fulfillment of the first condition of this receipt. *Third.* The acceptance of the above sum, after the same became due, shall not establish a precedent for acceptance of future payments to the association, nor shall any subsequent payment to the association upon said certificate impair,

waive, alter, or change any of the conditions of this receipt, or of said certificate.                                        W. G. CORTHELL, Treasurer.

"Not valid unless countersigned by
   "E. CLARK, Cashier."

On the 1st day of July and on the 2d day of September notices of similar calls or assessments were mailed to the insured, each of which contained the following provisions: "The sending of this notice shall not be held to waive any forfeiture or lapse of membership, if previous assessments remain unpaid;" and "the payment of this call will be accepted by the association, and a receipt given therefor, on the express agreement that no condition whatever upon which any previous payment has been received is waived thereby." Both of these assessments were duly paid. On the 5th day of September of the same year the defendant gave the insured notice of an annual assessment, in the following terms:

   "MASSACHUSETTS BENEFIT ASSOCIATION, ETC.
      "Annual Assessment.
                          "BOSTON, September 5, 1889.

"*Mrs. H. A. Griesa:* Amount due, $1.50. Your annual fee to meet the expenses of the association must be paid within 30 days of date given above, at our office, in order to maintain your policy in force, which will otherwise lapse and be void. The amount you pay into the 'death fund' is a contribution for the families or other dependents of deceased members. Many companies charge a per cent. for collecting death assessments; we do not, but pay expenses of doing the business, with no charge to you except this small annual fee. The sending of this notice shall not be held to waive any forfeiture or lapse of membership, if previous assessments remain unpaid. Please remit promptly, and notify us of any change or error in your address. Death assessments will be called on the first week-days of the following months: January, March, May, July, September, and November of 1889.
                          "W. G. CORTHELL, Treasurer

   "Pay now, and avoid overlooking it."

It will be observed that this notice contained the provision of previous notices, saving forfeiture or lapse of membership by reason of non-payment "of previous assessments,"—which had no application to this case, because no previous assessment remained unpaid,—but omitted the other clause, contained in previous notices, which was intended to provide against the waiver of any condition upon which any previous payment had been received. The principal defense set up by the answer is based upon the non-payment of the assessment of May 1st, within the 30 days named in the notice, and in the provision of the policy quoted. The effect of such non-payment, if insisted upon by the association, was, no doubt, to terminate the connection of the insured with the association, and to work a forfeiture of her rights under the contract. But to receive and retain the money after the expiration of the 30 days was an effectual waiver of such forfeiture, unless that effect was prevented by the condition attached to the receipt, and its non-fulfillment. The condition was that the insured was, at the date of such receipt, "in good health, and free from all diseases, infirmities, or weaknesses." The date of the receipt was June 5, 1889. The proofs of loss furnished by the plaintiffs to the defendant show that the insured died October 31, 1889, aged 71 years; that the immediate cause of death was "heart failure," and the remote cause, "the natural decline of age, increased by an early life of hardships;" that her health began to be affected two or three years before her death, and that the duration of her last sickness was "over a year." No other evidence than that contained in the proofs of loss was given on the subject of the health of the insured at the date of the receipt in question. We think it failed to establish a non-fulfillment of the condition of the receipt. All the terms employed in that condition are relative in their signification, and are to be construed ra-

tionally, and with reference to the condition of age, health, and strength existing at the time the contract was made. *Peacock* v. *Insurance Co.*, 20 N. Y. 293. The date of the contract of reinsurance by the defendant was October 5, 1888, but little more than a year before the death of the insured. The evidence furnished by the proofs of loss shows that her health began to be affected, by the natural decline of age, a year or two before the reinsurance, and that even the condition of infirmity, which was called in the proofs of loss her "last sickness," had its beginning before that time. The proofs show that she was subject to no disease, and that her only infirmities were those natural to old age, after an early life of hardship. Her age was known to the defendant when the contract was made, and it was in the course of nature that the infirmities incident to it should have increased at the time the receipt was given.

But, even though the condition contained in the receipt of June 5th was not fulfilled, there was sufficient evidence, in the subsequent dealings of the defendant with the insured, that the brief delay in making that payment was excused, and its effect, by way of forfeiture of the policy, was waived. Notices of two other successive mortuary assessments, of July and September, were given to the insured, and the money was promptly paid. It is true that in the notices of those assessments it was declared that acceptance of payment thereof should not waive any condition upon which any previous payment had been received; but, when the annual assessment for expenses of the association was levied in September, all such protest against waiver, except, only, in case of unpaid assessments, was omitted, and the insured was treated as a member of the association in unquestioned standing. This, of itself, under the well-settled doctrine of the cases, constituted a waiver of the possible forfeiture for delay in payment of a previous assessment. *Titus* v. *Insurance Co.*, 81 N. Y. 419; *Shay* v. *Society*, 7 N. Y. Supp. 287.

The defense chiefly argued on this appeal was that of *ultra vires*, under the statute of Massachusetts, under which the defendant was incorporated. The first and probably sufficient objection to this defense is that it was not pleaded, especially as it was based upon the statute of a foreign state. *Holmes* v. *Broughton*, 10 Wend. 75. But there are other answers to the defense which are equally conclusive. The statute of Massachusetts, referred to, (Act 1885, c. 183, § 10,) provides that "no corporation doing business under this act shall issue a certificate or policy upon the life of any person more than 60 years of age;" and section 1 brings all corporations, foreign as well as domestic, doing business on the assessment plan, in that commonwealth, under the provisions of the same act. So that the prohibition against issuing certificates to persons over 60 years of age would apply to New York corporations of the same character, doing business in Massachusetts. Thereupon counsel for the appellant call attention to the statute of New York, (Laws 1883, c. 175,) which provides that, where any other state shall impose any obligation upon such corporations of this state doing business in such other state, "the like obligations are hereby imposed on similar corporations of such other state transacting business in this state." And the effect is claimed, for this statute, of prohibiting the Massachusetts corporation, doing business in this state, from insuring any person over 60 years of age. It seems very plain that the statute referred to has no such effect. It is obligations, and not prohibitions, which the retaliatory enactment of New York imposes upon the corporations of other states doing business here; and, evidently, obligations to the state, in the way of license fees exacted and other requirements imposed, as a condition of doing business in the foreign state. *People* v. *Association*, 92 N. Y. 311. The provision of the statute referred to is evidently one to be strictly construed, and when so construed the term "obligation" will not be held to include a limitation upon the powers of the corporations referred to.

The alleged defense of want of jurisdiction of the courts of this state to en-

tertain an action in behalf of non-resident plaintiffs against a foreign corpo-
ration is in contravention of section 1780 of the Code of Civil Procedure,.
which, in its third subdivision, expressly gives the jurisdiction in question,.
where, as in this case, the cause of action arose in this state.    That cause of
action arose upon the death of the insured at North Cohocton, Steuben county,
N. Y., which was also her residence at the time the contract was made.  *Fire·
Department* v. *Beecher*, 99 N. Y. 429, 2 N. E. Rep. 154.  We find no excep-
tion in the case beyond those which raise the questions already discussed.
    The judgment appealed from must be affirmed.