87 199<br>156a 669

Amelia Sieburg, Plaintiff, *v.* Massachusetts Benefit Association, Defendant.

*Mutual benefit association — waiver of forfeiture for non-payment of an assessment.*

Upon the trial of an action, brought to recover the amount of two life insurance policies issued by a mutual benefit association, it was shown that the insurer did not intend to terminate the policies by reason of the failure of the insured to pay a certain assessment levied thereon, provided such assessment was subsequently paid, and the insurer, by a notice to the insured, stated that the policies might be renewed "by immediate payment, if the risk is approved by the Association upon receipt of said payment at the home office." Immediate payment was made at the home office, the risk was approved by the insurer and the policies were renewed by it.

*Held,* that the insurer expressly waived its right to insist that the policies were forfeited and was estopped from asserting that they were not in full force at the time of the death of the insured.

Motion by the defendant, the Massachusetts Benefit Association, for a new trial on a case containing exceptions ordered to be heard at the General Term in the first instance, upon the verdict of a jury in favor of the plaintiff rendered by direction of the court after a trial at the New York Circuit on the 10th day of December, 1894.

*Andrew Shiland, Jr.,* for the plaintiff.

*J. K. Hayward,* for the defendant.

FOLLETT, J. :

This action was begun December 10, 1892, to recover the amount due on two policies of life insurance, and the only defense is that they had been forfeited by failure to pay mortuary assessment No. 71 of March 1, 1892.

The defendant is a mutual benefit association, incorporated in 1878 under the laws of the State of Massachusetts.  The statute under which it was organized is not in evidence nor referred to, nor are its articles of association, and so we assume that it was authorized to make the policies set out in the complaint.  July 13, 1888, the defendant issued to George Sieburg of this city two instruments, each called a "policy," one being numbered 20,228 and the other 20,229, both being alike except the numbers.  By each policy the defendant promised, on the death of George Sieburg, to pay to Amelia Sieburg, his wife, $5,000.  Each policy was issued in consideration of a pre-payment of twenty dollars and of the payment thereafter of certain sums, as provided in the following articles of each policy :

" *Fifth.*    There shall be paid by the member under this contract in forty days from the date thereof and annually from said date thereafter, to the Treasurer of the Association, an assessment of 15 dollars as a part of the expense fund, which fund is at the sole disposal of the officers of the Association, and he shall not be liable for any further sum in each year except as following :

" *Sixth.*    Upon the death of any member of the Association said member under this contract shall at once pay, if required, to its Treasurer an additional assessment of six $\frac{95}{100}$ dollars, which can be used only for the payment of death losses and for the Emergency Fund as authorized by law ; but such assessment will not be required so long as there remains in the death fund, subject to call of the Treasurer, a sum sufficient to pay outstanding claims for death losses.

" *Seventh.* The form of notice to and process of collection from each of the members of the assessments above named shall be as follows : A notice shall be sent, announcing such assessment, to the last post office address given to the Association by each member ; if

the assessment is not received within thirty days from the mailing of said notice it shall be accepted and taken as sufficient evidence that the party has decided to terminate his connection with the Association, which connection shall thereupon terminate, and the party's contract with the Association shall lapse and be void, and all rights thereunder be forfeited to the Association ; but said party may again renew his connection with the Association by a new contract made in the same manner as at first; or he may be reinstated by the officers of the Association for reasons satisfactory to them, and upon such conditions as they may require. But such renewal of this contract or reinstatement shall not operate, or be treated or construed to be a waiver of any of the terms, conditions or requirements of this contract."

It is conceded that George Sieburg paid the annual assessment or premium on each policy in each year, as required by the fifth article above quoted. George Sieburg died April 18, 1892, leaving his widow surviving. Due proofs of death were made, and it is conceded that if the plaintiff is entitled to recover she is entitled to $10,000, with interest thereon from September 27, 1892, for which sum the verdict was directed. The only defense interposed is that March 1, 1892, the defendant made a mortuary assessment of ten dollars and forty-three cents on each policy " for the payment of death losses and for the emergency fund," which George Sieburg neglected to pay, as required by said sixth and seventh articles.

March 1, 1892, the defendant mailed to George Sieburg the following notice :

" MASSACHUSETTS BENEFIT ASSOCIATION,

" OFFICES : EXCHANGE BUILDING, BOSTON,

" 53 STATE STREET.

" Take the Elevator,

" 53 State Street,

" Hours, 9 A. M. to 5 P. M.

" BOSTON, *March* 1, 1892.

" MORTUARY CALL No. 71 is now made, and must be paid on or before April 1, 1892, at the office of the Association, in order to maintain your policy in force, which will otherwise lapse and be void. This call is for mortuary and disability purposes, and not

exceeding one-thirtieth of one per cent on the amount insured for expenses under Article XVI of the By-Laws of this Association, and in accordance with the Statutes of Massachusetts.*

" Full particulars of the last call will be found on accompanying statement.

" The sending of this notice shall not be held to waive any for-feiture or lapse of membership if previous assessments remain unpaid.

" Payment of Mortuary Calls will be demanded six times in each year, once in every two months, beginning January 1.

" Next call is now made for May 2, 1892, and must be paid on or before June 1, 1892, in order to maintain your policy in force, which will otherwise lapse and be void.

" The payment of this Call will be accepted by the Association and a receipt given therefor, on the express agreement that no condition whatever upon which any previous payment has been received, is waived thereby.

"W. G. CORTHELL, *Treasurer.*

" PAY NOW AND AVOID OVERLOOKING IT.

" The cost in this association averages only about one-half that in Level Premium Companies.

MASSACHUSETTS BENEFIT ASSOCIATION.

" Mortuary call 71 remittance may be made by checks, drafts money orders, postal notes, registered letters or express orders, but such remittance must reach the home office of the association, in Boston, on or before the expiration of the time limit named in the notice. Parties not keeping a bank account can easily obtain a check from some friend.†

" Do not lose this original bill. Send bill and coupon to the Treasurer when remittance is made and receipt will be returned.

" Notice expires April 1, 1892."

April 9, 1892, the defendant mailed George Sieburg a duplicate of the aforesaid notice, across the face of which was stamped the following :

---

* The following was printed in the margin : " If unpaid April 1, your Certificate will at once lapse and be void."

† The following was printed in the margin : " Coupon attached to notice."

"Certificate forfeited for non-payment. May be renewed by immediate payment, if the risk is approved by the Association, upon receipt of said payment at the home office."

April 11, 1892, the insured received the duplicate notice, and on the same day mailed to the defendant this letter:

"OFFICE OF GEORGE SIEBURG, MANUFACTURER OF OFFICE AND BAR FIXTURES, Nos. 211 AND 213 WOOSTER STREET.

"NEW YORK, *April 11th*, 1892.

"MASSACHUSETTS BENEFIT ASSOC'N:

"GENTS.— Having been away from business a couple of weeks I find that the payment of your assessments have been forgotten.

"I herewith send you Check for $20.86, requesting you to excuse the delay and to acknowledge receipt and oblige

"Yours truly,

"GEORGE SIEBURG."

Inclosed in the letter was a check drawn by George Sieburg on the Germania Bank of New York, payable to defendant's order. The letter and check were received by the defendant April 12, 1892, and thereupon defendant mailed to George Sieburg the following receipt:

"MASSACHUSETTS BENEFIT ASSOCIATION,

"EXCHANGE BUILDING, BOSTON, MASS.

"Received of Geo. Sieburg $10.43 on this 12th day of April, 1892, for Mortuary Call or Assessment No. 71 on Policy No. 20,228, which amount became due and payable before this day (thirty days allowed for payment thereof having expired).

"For non-payment of said assessment on or before the date it became due, said Certificate or Policy lapsed or expired, and the above payment being tendered after the same became due and payable, said payment is made and received and this receipt given by the Association and accepted by the member, and every person having or acquiring any interest in said policy, upon the following conditions and not otherwise:

"*First.* That said member is now living and of temperate habits, and is now in good health and free from all diseases, infirmities or weaknesses, otherwise said payment and this receipt and said policy shall be and is null and void.

"*Second.* The receipt and acceptance of the above sum by the

Association shall not be held to waive forfeiture or expiration of membership, or to reinstate membership, or to create any liability on the part of the Association under said certificate, except upon fulfillment of the first condition of this receipt.

"*Third.* The acceptance of the above sum after the same became due shall not establish a precedent for acceptance of future payments to the Association, nor shall any subsequent payment upon said certificate impair, waive, alter or change any of the conditions of this receipt or of said certificate.

"W. G. CORTHELL, *Treasurer.*

"Not valid unless countersigned by
"E. CLARK, *Cashier.*"

A like receipt was mailed on account of policy No. 20,229. The check was indorsed by Wendell G. Corthell, the defendant's treasurer, for collection, and was paid April 19, 1892, upon presentation to the drawee. The defendant's cashier testified that the check and letter were received April 12, 1892, "and it was treated as if check was in payment of the March assessment on said Sieburg policies respectively." The treasurer also testified that the check was not immediately deposited for collection, but was held until a sufficient number of checks were on hand to justify a deposit.

In the proofs of loss the plaintiff and two physicians who attended the decedent in his last illness testified that he was taken sick April 13, 1892, two days subsequent to mailing the check, was ill five days and died from acute rheumatic disease of the heart. The defendant offered no evidence tending to show that the insured was not in good health on the day that the check was mailed and on the day the defendant mailed the foregoing receipts. The defendant did not show, or offer to show, that it had returned or had offered to return the payment of April 11, 1892, and it now insists as a defense that the policies were forfeited because the assessments were not paid when due, and that, notwithstanding its acceptance and retention of the money, it is not estopped from insisting that the failure to pay the assessments when due caused a forfeiture of the policies.

This contention cannot be sustained. By the seventh article of the policy above quoted it is provided : "If the assessment is not

received within thirty days from the mailing of said notice, it shall be accepted and taken as sufficient evidence that the party has decided to terminate his connection with the association, which connection shall thereupon terminate, and the party's contract with the association shall lapse and be void, and all rights thereunder be forfeited to the association, but   *   *   *   he may be reinstated by the officers of the association, for reasons satisfactory to them, and upon such conditions as they may require." It is apparent that the insured did not intend that his policies should be forfeited, and it is also apparent that the defendant did not accept the failure to pay the assessments within thirty days as sufficient evidence that the insured had decided to terminate his connection with the association. And it is apparent that the defendant did not intend to terminate such connection, provided the assessments were subsequently paid The intention of the insured is shown by his letter and check, and the intent of the defendant is manifest by its second notice, its acceptance and retention of the amount of the assessments and by its two receipts given for them. On the second notice the defendant stated that the policies might be renewed " by immediate payment, if the risk is approved by the Association, upon receipt of said payment at the home office." Immediate payment was made at the home office, the risk approved by the association, and the policies were renewed by the defendant. By these acts the defendant expressly waived its right to insist that the policies were forfeited, and is estopped from asserting that they were not in full force at the time of the death of the insured. (*Wyman* v. *Phœnix Life Ins. Co.*, 45 Hun, 184; *Haas* v. *Montauk Fire Ins. Co.*, 49 id. 272 ; *Shay* v. *National Benefit Society*, 54 id. 109 ; *Titus* v. *Glens Falls Ins. Co.*, 81 N. Y. 410 ; *Dennis* v. *Massachusetts Benefit Association*, 120 id. 496; *Kenyon* v. *Knights Templar & M. M. Assn.*, 122 id. 247; 2 Biddle Ins. pp. 1106 *et seq.* and cases cited; 2 May Ins. [3d ed.] § 362.)

The exception taken by the defendant, that it was not shown by legal or competent evidence that the plaintiff was the wife of George Sieburg, is not worthy of much consideration. The policies are payable to "Amelia Sieburg (wife)." A witness testified that he knew George Sieburg, who introduced the plaintiff as his wife ; that he knew she was his wife, and knew she was the same person men-

tioned in the policies as the wife of George Sieburg. It was not necessary to prove their marriage by one who saw them married, nor by documentary evidence. It might as well be urged that a person designated as the son of one taking out a policy must, in an action to recover on the policy, show that he was begotten by the person insured.

The defendant's exceptions should be overruled and a judgment ordered for the plaintiff on the verdict, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Exceptions overruled and judgment ordered for plaintiff on verdict, with costs.