(85 App. Div. 520.)

MASON v. STANDARD DISTILLING & DISTRIBUTING CO.

(Supreme Court, Appellate Division, First Department.   July 7, 1903.)

1. GUARANTY—WHEN TERMINATED.
    A guaranty printed on a certificate of stock, reading, "The undersigned hereby guarantees and agrees to pay to the holder of record of the within certificate, so long as said certificate shall be outstanding, but not to exceed the present unexpired term of the period for which said * * * Company is incorporated," a certain dividend, is terminated by the voluntary dissolution of the company.

2. SAME—ESTOPPEL TO ASSERT.
    The bare fact that the guarantor procured the dissolution of the company would not estop it from averring that fact as a defense to an action on the guaranty.

3. FOREIGN CORPORATIONS—ULTRA VIRES ACTS—PLEADING DEFENSE.
    In pleading the defense of ultra vires it was proper for the defendant, a foreign corporation, to plead the foreign statute, so as to enable the court to have before it the powers granted and limitations placed on corporations.

4. SAME—NECESSITY.
    The defense of ultra vires must be pleaded, to be available.

Appeal from Special Term, New York County.

¶ 4. See Corporations, vol. 12, Cent. Dig. § 2082.

Action by James W. Mason against the Standard Distilling & Distributing Company. From an interlocutory judgment overruling plaintiff's demurrer to the first and second affirmative defenses contained in defendant's answer, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ.

Charles Thaddeus Terry, for appellant.
Levy Mayer, for respondent.

HATCH, J. The complaint avers that the plaintiff is a resident of the county and state of New York, and that the defendant is a corporation existing under the laws of the state of New Jersey; that the plaintiff is the owner and lawful holder of 18 shares, of the par value of $100 each, of the first preferred stock of the Spirits Distributing Company, a corporation also existing under the laws of the state of New Jersey, and that said corporation was organized on or about the 4th day of January, 1896, for a chartered period of 50 years; that the defendant, for a valuable consideration, in April, 1899, promised and agreed to pay to the holders of record of the said certificates, or to the owner of all the rights, title, and interest of such holder of record of such certificate, a 1½ per cent. dividend on the 15th days of January, April, July, and October in each year, beginning with the year 1899, on every share of first preferred stock of said Spirits Distributing Company represented by the said certificate. Such agreement was reduced to writing, signed by the defendant, and printed upon the said certificate of stock, and reads as follows:

"For good and valuable considerations, the receipt of which is hereby acknowledged, the undersigned hereby guarantees and agrees to pay to the holder of record of the within certificate, so long as said certificate shall be outstanding, but not to exceed the present unexpired term of the period for which said Spirits Distributing Company is incorporated, one and one-half per cent. dividend on the 15th days of January, April, July and October, in each year beginning with the year 1899, on every share of first preferred stock of said Spirits Distributing Company represented by the within certificate. [Signed] Standard Distilling and Distributing Company, by N. E. D. Huggins, Secretary."

The complaint further avers that the defendant made default in payment of the dividends upon the regular quarterly days of 1902 and 1903, and that the plaintiff demanded payment of the sums due and payable to him under and by virtue of the certificate of stock held by him, which was refused, and for which sums judgment is demanded. For a second cause of action the plaintiff seeks to recover dividends provided to be paid upon 18 shares of second preferred stock, pursuant to a guaranty in all respects similar to the guaranty upon the first preferred stock, and executed by the defendant.

For answer to the complaint the defendant admits the incorporation of the respective companies as averred therein, also the execution on its part of the agreement of guaranty as averred therein, but denies that there is anything due and owing to the plaintiff from it. For a first and separate defense, the defendant avers that the Spirits Distributing Company was organized for the purpose of purchasing, storing, selling, shipping, warehousing, transporting, and forwarding

spirits, alcohol, and all liquors or compounds containing spirits or alcohol, etc., with a capital stock of $7,350,000, divided into 73,500 shares of the par value of $100 each share, 21,000 shares of which are first preferred stock, upon which the holders were entitled to an annual dividend of 7 per cent., if earned; 15,750 are second preferred stock, the holders of which were entitled to a noncumulative annual dividend, not to exceed 6 per cent., after the dividend on the first preferred stock should be paid; 36,750 shares are common stock, the holders of which were to be paid an annual dividend of whatever profits remained after paying the dividends on the other stock. The defendant further avers that it was organized in June, 1898, for practically the same purposes as the Spirits Distributing Company; that in December, 1898, one C. H. Eichs made a proposition to the Spirits Distributing Company that if it would issue and deliver to him, full paid and nonassessable, $200,000 of their first preferred stock, he would in consideration therefor deliver to it $200,000 of their common stock, and with its assistance cause its charter to be legally amended, so that the first preferred stock should pay an annual dividend of 6 per cent. instead of 7 per cent., and that the second preferred stock should pay an annual dividend of 2 per cent. instead of 6 per cent., and that he would also procure certain other valuable considerations for it, and would procure the defendant to guaranty and pay during the existence of the Spirits Distributing Company a 1½ per cent. quarterly dividend upon the first preferred stock outstanding. He also made a similar proposition to the defendant. These propositions were duly accepted by both corporations, and the scheme was finally carried into effect; the stockholders of the Spirits Distributing Company gave up their old certificates of stock, and received new certificates in place thereof; that the payment of 1½ per cent. on the first preferred stock was guarantied as above set forth by the defendant; that, after such guaranty was made by the defendant, the Spirits Distributing Company never paid any dividends except one, but that the defendant, upon failure so to pay, paid all owners of such preferred stock, who demanded such payment of the defendant, up to the time of the final dissolution of the Spirits Distributing Company. After the defendant had made the guaranty of payment upon the first preferred stock, a third company was duly incorporated under the laws of the state of New Jersey, known as the "Distilling Company of America," on the 11th day of July, 1899, for the purpose of carrying on the same kind of business as the Spirits Distributing Company. This new company owned a majority of the stock of the Spirits Distributing Company. After the organization of the Distilling Company of America, and while it owned a majority of the stock of the Spirits Distributing Company, it was ascertained that the latter company was earning no dividend whatever, and that the American Spirits Manufacturing Company, from which the Spirits Distributing Company derived nearly its entire income, was in a critical financial condition, and could not continue to pay dividends upon its stock, and thereafter the stockholders, by a vote at a meeting duly called, representing a majority of the stock of the Spirits Distributing Company, went into voluntary dissolution, and under due process of law of the state of New Jersey was finally

dissolved, and ceased to have any existence as a corporation. The defendant further avers that the guaranty of payment of the quarterly dividend upon the first preferred stock ceased with the dissolution of the said corporation, in consequence of which no liability of the defendant exists thereunder. For a second and further affirmative defense, the defendant averred that, inasmuch as the defendant was incorporated solely for the purpose of dealing in alcoholic spirits, as therein averred, it had no right to enter into the guaranty with the Spirits Distributing Company, and that the said agreement is ultra vires and void. To these two affirmative defenses the plaintiff demurred. The demurrer was overruled, and from the interlocutory judgment entered upon the decision this appeal is taken.

The primary question presented by the demurrer involves a construction of the contract of guaranty. By its express terms the defendant corporation undertook to pay the dividend provided for therein so long as the certificates to which such guaranty applied should be outstanding, not, however, exceeding the unexpired term of the period for which the Spirits Distributing Company was organized. The contract contemplates the continued existence of the corporation. When the corporation was dissolved it ceased to be, and, so ceasing to exist, it could have no outstanding certificates of stock, except for the purpose of liquidation of the affairs of the corporation. It is evident that the defendant did not undertake to pay, by the terms of its guaranty, the dividend upon these shares of stock after the corporation had ceased to exist. In natural order of events, the obligation which it assumed contemplated that the corporation whose stock it guarantied would continue as a going concern, earn the dividends, and pay them from such earnings. This is true whether the contract of guaranty be construed as secondary or as an original undertaking, for it was that corporation which it was expected would earn the dividends. Such shares, so long as the corporation continued to exist, were outstanding certificates within the contemplation of the agreement of guaranty. When, however, the corporation was dissolved and ceased to be, then the certificates, within the terms and meaning of this contract, were no longer outstanding. The law under which the Spirits Distributing Company was organized authorized its dissolution by proceedings against it by the public authorities, through which it might be forced out of existence, and also by voluntary action of its shareholders. The law so providing, the parties to the guaranty dealt in reference thereto, and such contingency must be deemed to have entered into consideration at the time when the guaranty was given. Lorillard v. Clyde, 142 N. Y. 456, 37 N. E. 489, 24 L. R. A. 113. Undoubtedly it was competent for the defendant to guaranty the payment of these dividends during a period coexistent with the life of the corporation, and, if such was the contract, then the dissolution of the corporation would not affect it, as its undertaking would not be dependent thereon; but when the contract depends upon the continued existence of the person or thing, the subject-matter thereof, the death or destruction of it puts an end to the contract, and this is so, whether the contract speaks upon such subject or not, if it is fairly to be inferred from the entire transaction that it did depend thereon. It is

only where the thing is contracted to be done without qualification, and subject to no contingency, that it remains as a continuing obligation, surviving the death of the subject to which it relates.   The present contract not only contains language of limitation, but in terms it is expressed in the guaranty that the obligation is to pay so long as the certificates shall be outstanding—not, however, exceeding the chartered period of the corporation.   It is evident, therefore, that the construction to be placed upon this guaranty does not continue beyond the life of the corporation, however that be brought about, if it be accomplished by any of the forms known to the law.   It is conceded that the Spirits Distributing Company was legally dissolved, and that it now, as an entity, has no existence.   Such was the frank concession of the learned counsel for the appellant.   This being the fact, it would seem to follow, as a necessary conclusion, that by the terms of the guaranty the obligation of the defendant was at an end, as there was at the time when the action was brought no outstanding certificates of a living corporation, which was within the evident contemplation of the parties and was contained in the terms of the guaranty.

The appellant, however, contends that, although the Spirits Distributing Company is legally dead, yet that this contract survives, for the reason that the defendant was the owner of a controlling interest with the Distilling Company, and that it was also a controlling owner of the Distilling Company of America, and was controlling the stock of the Spirits Distributing Company; that it procured the voluntary dissolution of such corporation, and thereby, by its own voluntary act, it has relieved itself from the obligation imposed by the guaranty; that, such being the fact, it is now estopped from averring as a defense the dissolution of the Spirits Distributing Company; that therefore the answer which seeks to make such dissolution available is opposed to equity and justice, and should not be permitted.

It is to be observed that the complaint in this action is predicated solely and entirely upon the terms of the guaranty.   The plaintiff cannot succeed in his action unless he is able to show that, at the time when the action was brought, this guaranty was in existence as a valid, subsisting contract, or that the defendant is estopped from denying its existence.   If the act of the defendant and the Distilling Company of America in instituting the proceedings for the voluntary dissolution of the Spirits Distributing Company was conceived and carried out for the purpose of relieving the defendant from its obligation of guaranty, then such act and such scheme would amount in law to a fraud, and, whatever damage the plaintiff sustained thereby, he would undoubtedly have a cause of action.   Such, however, is not this case. This is a demurrer to an answer, and the only question, therefore, which we can consider, is whether, the bare fact of the dissolution having been accomplished by the action in part at least of the defendant, it is estopped as matter of law from averring such fact as a defense.   In People v. Globe Mut. Life Ins. Co., 91 N. Y. 174, relied upon by the appellant, a case was presented where the receiver of a corporation, which had been dissolved by action upon the part of the state, was sought to be charged in damages for the alleged breach of a contract in discontinuing the employment of an agent who had en-

tered into a contract with the insurance company for a period of five years. The court held that as the dissolution was within the contemplation of the parties, although not expressed in the agreement, its effect was to terminate the contract, and no action for damages thereon would lie. The court in that case discussed the effect upon such contract of a voluntary dissolution, and reached the conclusion that it did not appear from the record that the insurance company worked its own dissolution; and, while it recognized the principle that a party may not plead, as an excuse for fulfilling an obligation, its own fault and act, yet that therein it did not appear from the record that the corporation had been guilty of a fault which caused its death. In that case the court was concerned with the proof. In the present case we are only concerned with the pleading. If it should be made to appear, as it may, that the condition of the corporation was such as required its dissolution, or if facts existed which would have justified the action of the state in forcing it into involuntary dissolution, and the defendant was not responsible for such condition—acted without fraudulent intent—no cause of action would exist under this guaranty, within the doctrine of the case above cited. The above case is as strong in favor of the plaintiff's contention as any that will be found. It falls far short, however, of supporting the contention of the plaintiff, as under this answer it may be shown, and the court may find, that the dissolution was not only lawful in legal effect, but also lawful in intent and purpose; and, if this be so, whether the act is voluntary or involuntary which works the dissolution is of no consequence, as each party must be held to have contracted in contemplation of such result. Genet v. D. & H. C. Co., 136 N. Y. 593, 32 N. E. 1078, 19 L. R. A. 127, does not conflict either in principle or otherwise with this view. Therein it was held that, as the loss under the contract was occasioned by a cause which the parties evidently did not contemplate would occur, and therefore did not embody such contingency in the contract, and the damage was occasioned by the negligence of the defendant, plaintiff had a cause of action thereon. If it appeared in this case that defendant worked this dissolution for the purpose of escaping liability under its contract, doubtless the plaintiff will have a good cause of action against it. The court, however, cannot determine such question upon demurrer, and the defendant under its answer may show that such was not the purpose. The principles which govern and control this case in its present condition are correctly stated in Jugla v. Trouttet, 120 N. Y. 21, 23 N. E. 1066. In that case the contract was between parties to a business which was dependent for its success upon the continuation of the manufacture of gloves—the subject of the contract—by the defendant. The contract in terms did not provide that the defendant should continue such manufacture, although it was essential to the success of the business which the plaintiff had purchased. The court held that no liability was imposed upon the defendant to continue such manufacture, as the contract had not stipulated therefor. In that case the defendant averred that he was induced to purchase the business by the fraud of the plaintiff in inducing him to believe, as a consideration for the purchase, that the defendant would continue to manufacture and furnish him with gloves. This issue was decided.

against the defendant.   Thereupon he insisted that the law imported into the contract a covenant compelling the defendant to continue to manufacture and furnish the plaintiff with gloves, as it was essential to the business which he purchased, and therefore to be implied.   The court held, while recognizing the principle of law as correct, that it has no application to the case, as it could not be regarded as being within the contemplation of the parties.

In the present case, as we have already observed, the contract itself contemplated the dissolution of the corporation, either by voluntary act or through involuntary proceeding.   It made precise stipulation that it should only be liable upon the certificates so long as they should be outstanding.   The certificates are no longer in existence and outstanding within the meaning of the contract, and the question comes to rest finally upon the fact, so far as any question is involved relating to this subject on this appeal, upon the construction to be given this guaranty.   Standing naked and alone, the dissolution worked its destruction, and by its terms it no longer exists as an obligation against the defendant.   It is undoubtedly true that the defendant cannot avail itself of its own fraudulent act in procuring this result, but that question may be disposed of when it arises.   For the present, we are only concerned with the construction of the guaranty and the effect of the answer, which we conclude sets up a defense.

So far as the second affirmative defense is concerned, as the defendant is a foreign corporation, it is undoubtedly essential, in order to raise the question of ultra vires, to plead the statute, in order that the court may have before it the powers granted and the limitations placed upon the corporations.   Griesa v. Mass. Benefit Ass'n (Sup.) 15 N. Y. Supp. 71, affirmed on opinion below, 133 N. Y. 619, 30 N. E. 1146.   It appears that the defendant was incorporated for the purpose of carrying on a business quite similar to that of the Spirits Distributing Company (such is the averment of the answer), and that it had power to buy the stock of the latter.   If it had the power to purchase such stock, it would seem to have power to guaranty payment of such stock, if it sold it to a purchaser (Arnot v. Erie R. R. Co., 5 Hun, 608; affirmed on appeal, 67 N. Y. 315); and, if it had the power to purchase and sell such stock, it would have the power to estop itself from raising such question when its contract is sought to be enforced.   Whitney Arms Co. v. Barlow, 63 N. Y. 62, 20 Am. Rep. 504.   In view of the fact that the business of these corporations was so closely assimilated in character, and the general management and control of each was largely governed by the same individuals, it can neither be affirmed, nor denied, under the pleading, that the contract of guaranty is ultra vires.   It is enough to say now that it may be made to appear, when all the facts are developed, that the contract was one outside of the corporation to make, and the defendant is bound to plead it in order to make it available.   Both defenses, therefore, are sufficient to present questions of fact, and therefore both are sufficient to resist the demurrer.

It follows that the interlocutory judgment should be affirmed, with costs.   All concur.