ROLAND R. DENNIS, Respondent, *v.* THE MASSACHUSETTS BENEFIT ASSOCIATION, Appellant.

Defendant issued a policy or certificate of membership to D., conditioned that it would pay the amount of a death assessment if he complied with its rules and regulations, but a failure to comply with its rules as to payment of assessments would render the certificate void. It was provided by the rules that notice of assessments should be sent to the last post-office address given to the defendant by each member, and if the assessment was not received within thirty days from the mailing of said notice "it shall be accepted and taken as sufficient evidence that the party has decided to terminate his connection with the association, which connection shall thereupon terminate and the party's contract with the association shall lapse and be void; but for valid reasons to the officers of the association (such as a failure to receive notice of an assessment) he may be reinstated by paying assessment arrearages." On February fifteenth, defendant mailed to D. a notice of assessment which required him to make payment on or before March fifteenth. On March eighth, D. was stricken with apoplexy and rendered unconscious, in which condition he remained until March nineteenth, when he died. On March twentieth, a second notice was received from defendant, like the first with these words stamped thereon: "Certificate forfeited for non-payment. May be renewed by immediate payment if in good health." In an action upon the certificate it appeared that the reason for non-payment was properly presented on behalf of plaintiff to defendant, and the amount of the assessment tendered; that defendant refused to accept, and claimed the certificate forfeited; it also appeared that three prior assessments were not paid by D. until after they were due; that these were accepted, no other act aside from payment being required to keep the policy in force. The court refused to submit the case to the jury, and at defendant's request directed a verdict in its favor. *Held,* error; that defendant's contract must be construed as an agreement on its part to accept a valid, *i. e.,* a sufficient or satisfactory excuse for non-payment,

and thereafter continue the policy in force; that the question as to the validity of the excuse was not left exclusively to the determination of defendant's officers, but where such an excuse existed they were bound to be satisfied therewith; that the facts showed a valid excuse, and that the death of D. did not alter defendant's contract obligations, but the legal right to reinstatement passed to the beneficiary under the policy. Reported below, 47 Hun, 338.

(Argued April 29, 1809; decided June 3, 1890.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made February 14, 1888, which reversed a judgment in favor of defendant entered upon a verdict directed by the court, and reversed an order denying a motion for a new trial and granted a new trial.

On the 3d day of August, 1883, the defendant, a mutual benefit association, issued a certificate of membership to one J. Fred. Dennis, conditioned that if Dennis should comply with the rules and regulations of the defendant, and forming a part of the contract, the defendant would pay to Anne C. Dennis, within sixty days after due proof of his death, a sum equal to the amount received from a death assessment, but not to exceed $5,000. The seventh condition of the contract is as follows: "A failure to comply with the rules of said association as to payment of assessments, or falling into gross and confirmed habits of intoxication, shall also render this certificate void."

The rules, in so far as they relate to the payment of assessments, are: "Second. Upon the death of any member the said party to whom this certificate is issued, shall at once pay, if required, to its treasurer, an additional assessment of six 75-100 dollars. Third. The form of notice to and the process of collection from each of the members of the association above named shall be as follows: A notice shall be sent announcing such assessment, and the number thereof, to the last post-office address given to the association by each member, and, if the assessment is not received within thirty days from the mailing of said notice, it shall be accepted and taken as sufficient evidence that the party has decided to terminate his connec-

tion with the association, which connection shall thereupon terminate, and the party's contract with the association shall lapse and be void; but said party may again renew his connection with the association by a new contract made in the same manner as at first ; or for valid reasons to the officers of the association (such as a failure to receive notice of an assessment), he may be reinstated by paying assessment arrearages."

February 13, 1886, the defendant mailed to Dennis a notice of assessment, by the terms of which he was required to make payment on or before March .fifteenth.   Seven days before the expiration of the time of payment, and on March eighth, Dennis, while walking in the streets of the city of New York, and apparently in good health, was suddenly stricken with apoplexy, rendering him immediately speechless and insensible.   He never regained consciousness, and died on March nineteenth, four days after the expiration of the time limited in the notice for the payment of the assessment.   The next day, March twentieth, a second notice was received from the defendant, in all respects like the first, with the exception that it had stamped upon the face, in red ink :   "Certificate forfeited for non-payment.   May be renewed by immediate payment if in good health."

The trial court refused plaintiff's request to submit certain specified questions to the jury and directed a verdict in favor of the defendant.

Further facts appear in the opinion.

*John A. Mapes* for appellant.   No question of fact having been submitted to or decided by the jury, the powers of the General Term were invoked simply to decide whether or not, as matter of law, the defendant was entitled on the trial to a directed verdict in its favor.   The same question is, therefore, properly before this court on this appeal. (*Cole* v. *Mann*, 62 N. Y. 4; *Mack* v. *R. G. Ins. Co.*, 106 id. 560.)   In cases of ordinary life·insurance, it has uniformly been held that failure to pay premiums when due by the terms of the policy, terminates the contract. (*Roehner* v. *K. L. Ins. Co.*, 63 N. Y. 160 ;

*Evans* v. *U. S. L. Ins. Co.*, 64 id. 304; *Howell* v. *K. L. Ins. Co.*, 44 id. 276; *Wheeler* v. *C. M. L. Ins. Co.*, 82 id. 543; *Holly* v. *M. L. Ins. Co.*, 105 id. 437; *N. Y. L. Ins. Co.* v. *Statham*, 93 U. S. 24; *Douglass* v. *K. L. Ins. Co.*, 83 N. Y. 503, 504; *Atty.-Gen.* v. *N. A. L. Ins. Co.*, 82 id. 190; *Carpenter* v. *C. L. Assn.*, 15 Ins. L. J. 455; *Yoe* v. *H. M. B. Assn.*, 63 Md. 86; *Hawkshaw* v. *S. Lodge*, 29 Fed. Rep. 773; *N. M. B. Assn.* v. *Miller*, 2 South West. Rep. 900; *Crossman* v. *M. B. Assn.*, 143 Mass. 435; *Borgrave* v. *K. of H.*, 22 Mo. App. 122; *B. Soc.* v. *Baldwin*, 86 Ill. 479; *Rood* v. *R. P. Assn.*, 31 Fed. Rep. 62; 63 N. Y. 167, 168.) The illness of the insured and his unconscious condition furnished no legal excuse for failure to pay the assessment. (*Carpenter* v. *C. L. Assn.*, 15 Ins. L. J. 455; *Yoe* v. *H. M. M. B. Assn.*, 14 id. 404; 63 Md. 86; *Klein* v. *N. Y. L. Ins. Co.*, 104 U. S. 88; *Hawkshaw* v. *S. L. & O.*, 29 Fed. Rep. 773; *Harmony* v. *Bingham*, 12 N. Y. 99; *Tompkins* v. *Dudley*, 25 id. 275; *Wolfe* v. *Howes*, 20 id. 197; *Clark* v. *Gilbert*, 26 id. 279; *Spalding* v. *Rosa*, 71 id. 40; Story on Bailm. § 36.) It was in no respect the fault of the association, but wholly that of the insured, that he neglected payment of the assessment when ordered, and until sickness had made it impossible for him personally to attend to it. (*Yoe* v. *H. M. B. Assn.*, 63 Md. 86.) Not being a member of the association at the time of his death, and, by reason thereof, having no contract of insurance in force, no action could be sustained on the certificate therefor. (*Karcher* v. *S. L. K. of H.*, 137 Mass. 368; *Borgrave* v. *K. of H.*, 22 Mo. App. 122, 143; *Yoe* v. *H. M. B. Assn.*, 63 Md. 86; *B. Soc.* v. *Baldwin*, 86 Ill. 479; *Blanchard* v. *M. Ins. Co.*, 33 N. H. 9; *Rood* v. *R. P. Assn.*, 31 Fed. Rep. 62.)

*J. K. Hayward* for appellant. There is an essential difference as to the conditions of reinstatement, between old-line insurance and membership insurance. (44 N. Y. 276.) An essential condition of defendant's liability under this certificate was dying in membership, nor can the reinstatement be initiated

and carried out after the death of the insured.    (*Cohen* v. *M. L. Ins. Co.*, 50 N. Y. 619; *Howell* v. *K. L. Ins. Co.*, 44 id. 276.)

*Treadwell Cleveland* for respondent.   The well-established rule making absolute the lapsing of a life policy upon the non-payment of the annual premium in accordance with the strict terms of the contract itself, is not applicable to the case at bar.   (*Atty.-Gen.* v. *N. A. L. Ins. Co.*, 82 N. Y. 190; *People* v. *K. L. Ins. Co.*, 103 id. 480; *Ins. Co.* v. *Stratham*, 93 U. S. 24.)   By the terms of the policy, failure to pay the assessment before March 15, 1886, did not operate as a forfeiture.   (*Baley* v. *H. F. Ins. Co.*, 80 N. Y. 21, 23; *Burleigh* v. *G. F. Ins. Co.*, 90 id. 220.)   If the beneficiary in the policy was by act of God or other insuperable obstacle, prevented from paying the assessment within the time specified in the notice, there existed a valid reason to the officers of the association for excusing such non-payment and reinstating the policy, and whether such valid reason did in fact exist was a question for the jury.   (*Hoffman* v. *A. Ins. Co.*, 32 N. Y. 413; *Howell* v. *K. L. Ins. Co.*, 44 id. 277; *Holly* v. *M. L. Ins. Co.*, 105 id. 437, 441; *D. S. B. Co.* v. *Gorden*, 101 id. 387; *Miesell* v. *G. M. L. Ins. Co.*, 76 id. 115, 119; *City of Brooklyn* v. *B. C. R. R. Co.*, 47 id. 475, 479; *Brunstein* v. *A. D. Ins. Co.*, 1 B. & S. 782, 793; *Moore* v. *Woolsey*, 4 El. & Bl. 242; *Homer* v. *G. M. L. Ins. Co.*, 67 N . Y. 482; *Wheeler* v. *C. M. L. Ins. Co.*, 82 id. 543, 554.)   The statutes of Massachusetts under which the defendant company was organized, forbid the absolute forfeiture of the policy in question, through the non-payment of the assessment.   (Gen. Stat. of Mass. chap. 119, §§ 159, 166.)   The plaintiff not only claims under the strict terms of the contract itself, but also under a clear and distinct waiver by the defendant of the stipulations of the policy.   (*Crossman* v. *M. B. Assn.*, 143 Mass. 435; *Shay* v. *N. B. Society*, 54 Hun, 109.)

PARKER, J.   If the certificate in question had provided without qualification that, for a failure to pay an assessment

within thirty days after the mailing of a notice thereof by the defendant, it should " lapse and be void," its invalidity would be established beyond dispute. (*Roehner* v. *K. L. Ins. Co.,* 63 N. Y. 160; *Evans* v. *U. S. L. Ins. Co.,* 64 id. 304.) And the fact that Dennis was prevented from making payment by an act of God, which deprived him of consciousness, would not relieve him from a forfeiture thus provided for. (*Wheeler* v. *C. M. L. Ins. Co.,* 82 N. Y. 543.)      But the question here presented is whether the contract does not fairly admit of a construction which gives to it, after the expiration of thirty days, where a member intends and desires to pay, conditional life, which continues until it shall be determined whether he had sufficient excuse for the omission? And if such a construction be permissible whether Dennis' severe visitation and subsequent unconscious condition constitutes such an excuse as, coupled with an intention to pay and subsequent payment, would continue the policy in force?

Judge PECKHAM, in *Holly* v. *M. L. Ins. Co.* (105 N. Y. 437), stated the rule which should govern courts in construing contracts involving a forfeiture as follows: "A strict construction, it is said, must be insisted upon, and the contract resulting in a forfeiture cannot be extended beyond the strict and literal meaning of the words used. This is undoubtedly true. In cases where the meaning is not entirely plain, and where it is capable of two constructions, one involving a forfeiture and the other being fair and reasonable and supporting the obligation of the policy against the insurer, that construction is preferred by the courts which does not involve the forfeiture, not only because it is not so harsh, but also because, if the language is doubtful, it is that employed by the insurer, and should be taken most strongly against him."

By the seventh condition of the certificate, forfeiture is made to depend upon "a failure to comply with the rules of said association as to payment of assessments." The second and third rules have reference to assessments and their payments.

Rule second provides that "upon the death of any member the said party to whom this certificate is issued shall at once pay

if required, to its treasurer an additional assessment of six 75-100 dollars."

This rule need not be considered, because the defendant did not require Dennis to pay at once.

By the terms of the notice he was expressly given until March fifteenth following, within which to make payment.

And the notice was in accordance with the provisions of rule third, which provided, among other things, that " if the assessment is not received within thirty days from the mailing of said notice, it shall be accepted and taken as sufficient evidence that the party has decided to terminate his connection with the association, which connection shall thereupon terminate, and the party's contract with the association shall lapse and be void ; * * * or for valid reasons to the officers of the association (such as a failure to receive notice of an assessment), he may be reinstated by paying assessment arrearages."

The right of the defendant to insist upon a forfeiture could not be doubted were it not for the last clause of the sentence quoted. By it is suggested the inquiry, what was the intent of the defendant in adding this apparently qualifying clause ? How did it suppose the persons solicited to become members would interpret it ? Certainly it did not expect them to understand it as giving added strength to the provision declaring a forfeiture. It is equally clear that it was intended to be understood as softening somewhat the extreme rigor of the forfeiture clause, which, standing alone and unqualified, would deprive a member of the insurance for which he has contracted and paid, even when by an accident of mail carriage the notice of assessment has failed to reach him, or because of the act of God he has been prevented from making payment within the time prescribed.

It cannot be doubted that it suggests, at least to the average reader, that the company has agreed to accept a valid excuse for non-payment of an assessment within the thirty days, and thereafter continue the policy in force. It is wholly meaningless and a snare if that be not the intent. That it was intended

to have that effect has support in the provision that failure to pay within thirty days "shall be accepted and taken as sufficient evidence that the party has decided to terminate his connection with the association." It will be observed that the contract does not provide in terms that failure to pay within thirty days shall work a forfeiture, but that failure to pay shall be taken as sufficient evidence of an intention to terminate his connection with the association, which connection shall thereupon terminate. Thus it is suggested that it is the intention, coupled with the failure to pay, which works the forfeiture. This language, therefore, seems to be in harmony with the last clause of the sentence. For, as intention constitutes one of the essential elements of a forfeiture, so, if a party intending to pay, but fails for a valid reason, "such as a failure to receive notice of an assessment," he may be reinstated. No new contract is required. Nothing, in fact, need be done but pay the assessment, if the excuse be accepted. Giving to all the words of the contract their full and proper meaning, as the defendant must have supposed they were understood by the promisee, they cannot, as we think, be construed otherwise than as limiting, and making conditional the forfeiture which would otherwise result from a failure to pay the assessment within the time prescribed. "It is a rule of law as well as ethics," says the court in *Hoffman* v. *Ætna Ins. Co.* (32 N. Y. 413), "that where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee." The defendant not only had reason to expect that its members would interpret the contract as we have suggested, but it has also, by subsequent transactions, given to the contract a practical construction to the same effect.

Although the greater number of assessments were paid by Dennis promptly, still three assessments were not paid until after the due date. No other act was required or thing done to continue the policy in force, except to pay the overdue assessments. And after he was in default on account of the assessment in question, and on March nineteenth, the defend-

ant mailed to him a notice that he could be reinstated "if in good health."

By this act the defendant indicated that it understood the policy to have conditional life remaining, because no new contract was required or suggested, the mere payment of the overdue assessment, said the defendant in effect, will support its vitality until another assessment shall be due and payable.

Such notice cannot be treated as a waiver, because it must be considered in its entirety, and thus regarded ; waiver was conditioned on the good health of Dennis — a condition that the defendant could not impose, if reinstatement, under the circumstances, was a matter of right, because it was not so written in the contract.

Was it a matter of right? Had Dennis, instead of dying, regained consciousness on the nineteenth day of March, could he have compelled the defendant to accept the excuse he had to offer, and continue his policy in force on payment of the back assessment?

We have said that the contract must be construed as an agreement that a member may be relieved from the effect of forfeiture for valid reasons to the officers.   Had he then established by evidence : First, that he had fully intended to pay ; second, that he was prevented by sudden illness depriving him of consciousness ; third, that he had tendered payment, what valid objection could have been interposed to the granting of a decree declaring the policy in full force and virtue?

It could not be urged that an act of God which instantly prostrates a man both physically and mentally does not constitute a legal excuse for the omission to do an act, when the making and acceptance of a valid excuse therefor is distinctly contracted for.

This assertion finds support in *Howell* v. *Knickerbocker Life Ins. Co.* (44 N. Y. 276.)

But it is said that the agreement vests the right to determine whether the excuse be valid in the officers of the defendant. That the manner in which they exercise their power is not open to review in the courts. In other words, that the officers

may arbitrarily refuse to accept any excuse whatever. If that were true, then failure to receive a notice of assessment, notwithstanding the fact that it is specifically referred to might be arbitrarily held to be insufficient as an excuse and the party left without redress. But such is not the law. The word "valid" as here used is equivalent to good, sufficient or satisfactory, and is not without judicial construction. In *D. S. B. Co.* v. *Garden* (101 N. Y. 387), the defendants agreed to pay as soon as they "were satisfied that the boilers, as changed, were a success," and in an action to recover the contract-price, the defendants contended that, by the stipulation, it was for them alone to determine whether the boilers were a success. This position was held to be untenable, because "a simple allegation of dissatisfaction without some good reason assigned for it, might be a mere pretext, and cannot be regarded." Judge FOLGER in *Miesell* v. *G. M. L. Ins. Co.* (76 N. Y. 115) states the rule as follows : "that which the law will say a contracting party ought to be satisfied with, that the law will say he is satisfied with." This principle is further illustrated and applied in *Folliard* v. *Wallace* (2 Johns. 395); *City of Brooklyn* v. *B. C. R. R. Co.* (47 N. Y. 575) ; *Braunstein* v. *A. D. Ins. Co.* (1 B. & S. 782) ; *Moore* v. *Woolsey* (4 El. & Bl. 243.)

We are of the opinion, therefore, that, had Dennis established the three propositions which we have stated, he would have been entitled to a judgment declaring the certificate in full force.

The death of the assured did not alter the contract obligations of the defendant. Dennis' legal right to reinstatement or to have the certificate declared to be in force did not die with him, but passed to the beneficiary under the policy. In *Wheeler* v. *C. M. L. Ins. Co.* (82 N. Y. 543, 554) this court held that "although the insured was dead, the right to a paid-up policy or its value remained to his assignees. If the insured had lived, he was entitled to it, and his assignees succeeded to his right."

The complaint in this action is appropriate to the relief sought to be obtained.

SICKELS — VOL. LXXV.     64

From the evidence, it appears that the reason for non-payment was properly presented to the defendant; the amount of the assessment tendered and the validity of the policy insisted upon, but the defendant refused to accept the reason given as valid or sufficient, and insisted that the certificate had been forfeited.

We think the evidence as to the intention of Dennis to pay the assessment properly presented a ·question for the jury. But it cannot avail the defendant, as it waived its right in that regard by requesting the trial court to direct a verdict in its favor:

The order appealed from should be affirmed and judgment absolute on defendant's stipulation ordered with costs.

All concur except BROWN, J., not sitting.

Order affirmed, and judgment accordingly.