(18 Misc. Rep. 91.)

GREENWALD v. UNITED LIFE INS. ASS'N.

(Supreme Court, Special Term, Onondaga County.    September, 1896.)

1. INSURANCE—ASSESSMENT ASSOCIATION—FORFEITURE.

Laws 1877, c. 321, providing that no life insurance company shall forfeit a policy issued or renewed by it by reason of nonpayment of any annual premium or interest, or any portion thereof, without giving a prescribed notice, is not applicable to an association conducting the business of assessment life and accident insurance.

**2. SAME—NONPAYMENT OF PREMIUM—DEFECTIVE NOTICE.**
Where a policy of insurance requires an association, before forfeiture for
nonpayment of a premium, to send the insured a notice "announcing each
assessment and the number thereof," the failure of the notice to announce the
"number" prevents forfeiture.

**3. SAME—INSTRUCTION TO TERMINATE PRESUMPTION ONLY.**
Where a policy of insurance provided that if an assessment is not paid in
30 days after mailing a notice thereof it shall be accepted as sufficient evi-
dence that the insured has "decided" to terminate his connection with the
association, which connection shall thereupon terminate, the intention to ter-
minate is conclusively rebutted by showing that the insured sent his unsigned
check, on a bank in which he had funds, to pay the assessment and in time
to meet it; that the association delayed notifying him of his mistake until
after the time for payment had elapsed; and that, when notified, he immedi-
ately made a cash payment for the assessments due.

Action by Philip Greenwald against the United Life Insurance As-
sociation to compel it to reinstate him as a member of the associa-
tion. Judgment for plaintiff.

Miller, Gridley & Pratt, for plaintiff.
Harry Wilbur and T. K. Fuller, for defendant.

HISCOCK, J. In this case I regard the following facts as estab-
lished, many of them without dispute or controversy: The defend-
ant is a domestic corporation duly organized under and by virtue of
the laws of the state of New York, carrying on and conducting the
business of assessment life and accident insurance. Its original
name, "United Life and Accident Insurance Association," has been
changed to that of "United Life Insurance Association." On or
about April 24, 1886, it issued and delivered to plaintiff two cer-
tain certificates or policies of insurance, by each of which it agreed to
pay, upon due proof of death, etc., the beneficiaries therein named,
the sum of $5,000, and also a weekly indemnity, provided said in-
sured should become injured by accident. Until the occurrences
hereinafter more specifically mentioned plaintiff undisputedly main-
tained his standing and rights under said contracts and policies, pay-
ing all dues and assessments as required, and which amounted in the
aggregate to the sum of about $2,500. On or about December 31,
1895, defendant mailed to plaintiff, at his proper post-office address,
in Syracuse, a notice of assessment of $14.25 upon each of said poli-
cies, stating that the same were due upon the two policies issued
to him, and this notice was received by plaintiff a few days there-
after. He had until and including February 1st in which to make
payment. Upon January 30th next, plaintiff attempted to make
payment to defendant of said assessments by sending to it a check
for the amount thereof, drawn upon the First National Bank of Syra-
cuse. He had an account in said bank which was good for the
amount of said check, and undisputedly intended to make payment
at said time of said assessments by said check, but inadvertently
omitted to sign his name to the same. The custom had grown up
and been permitted by defendant to plaintiff of paying his dues and
assessments by thus mailing at Syracuse checks to it at New York for
the same. Subsequently, and on or about February 4th or 5th, de-

fendant returned to plaintiff his check, claiming, in substance, that he had failed to pay his assessment; that his policies on account thereof had lapsed, and that the company would reinstate him after medical examination and approval.

The provisions of the policy and rules governing the same under which this action was taken by defendant are, mainly at least, found in clause 7 of the policy, which provides:

"A failure to comply with the rules of said association as to payment of assessments shall also render this policy void."

—And in rule 3 of the rules governing said contract, which provides:

"The form of notice and the process of collection from each of the members of the assessment above named shall be as follows: A notice shall be sent, announcing each assessment and the number thereof, to the last post-office address given to the association by each member, and, if the assessment is not received within thirty days after the mailing of said notice, it shall be accepted and taken as sufficient evidence that the party has decided to terminate his connection with the association, which connection shall thereupon terminate, and the party's contract with the association shall lapse and be void, but for valid reasons (such as failure to receive notice of an assessment) the officers of the association may reinstate such party after medical examination and approval upon payment of assessment arrearages."

Evidence of the sending of the notice required by the foregoing clause and rules was furnished by the affidavit of an employé of defendant, and is to the effect that:

"On the 31st day of December, 1895, by direction of the secretary of said association, he sent to Philip Greenwald a notice that an assessment of $14.25 was due upon each of said Greenwald's policies, Nos. 696 and 697, issued by said association, and that said notice of assessment stated that the same was issued by direction of the executive committee, and deponent avers that to his personal knowledge said committee had authorized and directed the issuance of said assessment to pay death losses of which the association had, prior thereto, been informed, and which said death losses or claims had already been approved for payment."

Plaintiff, with reasonable promptness after the return of said check and receipt of said notice, delivered to defendant in money the amount of said assessments, with interest, and indicated his willingness to undergo the examination called for. He submitted himself to an examination by a doctor approved by the defendant, but has been and will be unable to furnish any certificate of good health, because of the contraction of some disease,—probably diabetes. Defendant has treated the premiums paid to it in cash after the return of the check aforesaid as received subject to said physical examination and approval, and, when that did not take place, returned, or offered to return, the same to plaintiff, and has treated his policies as lapsed, etc. The clause which provides that defendant may reinstate plaintiff "after medical examination and approval," is not very complete or explicit, but it was assumed upon the trial of the case that plaintiff was not and never would be able to pass an examination which would entitle him to reinstatement under that clause, if his policies had lapsed. The decision of this case, therefore, turns upon the question whether plaintiff did make such default in the payment of the assessments of February 1, 1896, as entitled defendant,

under the terms of its contract with him, to treat him as in default and his policies and rights lapsed, and to the consideration of that question I now pass.

It is conceded by defendant that there was and could be no such default in payment of plaintiff's assessments as would cause a lapse of the policies issued to him by defendant, and forfeiture of his rights thereunder, until defendant had made due service of the notice required by law and by its contract with him requiring payment of such assessments. There was a contention between the parties as to what statutory law applied to this subject. It was claimed in behalf of plaintiff that the provisions of chapter 321 of the Laws of 1877, amending chapter 341 of the Laws of 1876, are applicable, wherein it is provided that:

"No life insurance company doing business in the state of New York shall have power to declare forfeited or lapsed any policy hereafter issued, or renewed by reason of nonpayment of any annual premium or interest or any portion thereof, except as hereinafter provided. Whenever any premium or interest due upon any such policy shall remain unpaid when due, a written or printed notice stating the amount of such premium or interest due on such policy, the place where said premium or interest should be paid, and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is assured, or the assignee of the policy, if notice of the assignment has been given to the company, at his or her last known post-office address, postage paid by the company, or by an agent of such company or person appointed by it to collect such premium. Such notice shall further state that unless the said premium or interest then due shall be paid to the company or to a duly appointed agent or other person authorized to collect such premium, within thirty days after the mailing of such notice, the said policy and all payments thereon will become forfeited and void," etc.

It was held in Carter v. Insurance Co., 110 N. Y. 15, 17 N. E. 396, that a policy is "renewed" every time the annual premium is paid, and therefore the language of the statute which is quoted making the same applicable to any policy issued or "renewed" after the passage of said law would not debar plaintiff from the benefits of said statute, if it were otherwise applicable. I do not think, however, that it is applicable to assessments of an assessment insurance company such as those involved here, but that defendant is right in its contention that section 210 of chapter 690 of the Laws of 1892 (the insurance law) applies to and covers this case. That section provides, among other things:

"Each notice of assessment, premium or periodical call made by any such corporation, association or society upon its members or any of them, shall truly state the cause and purpose of the same, and if the amount paid on the last death claim paid has not been paid in full at its maximum face value, the name of the deceased member and the maximum face value of the certificate or policy and the reason why not paid in full."

There is no suggestion that the last death claim paid by the defendant was not paid in full, and therefore, as contended by defendant's counsel, the notice to plaintiff of the assessments in question was required under this statute only to "truly state the cause and purpose of the same." I am uncertain whether the evidence furnished by the affidavit of defendant's employé of the mailing of notice to plaintiff of his assessments does establish that said notice

complied with the statutory provision just quoted.    The language of the affidavit is ambiguous in respect to any statement of the "cause and purpose" of the assessment.    It is to the effect (and I quote not only the language but the punctuation):

"That said notice of assessment stated that the same was issued by direction of the executive committee, and deponent avers that to his personal knowledge said committee had authorized and directed the issuance of said assessment, to pay death losses of which the association had prior thereto been informed," etc.

The question is whether the words "to pay death losses," etc., are to be read in connection with the preceding words, "that said notice of assessment stated that the same was issued by direction of the executive committee," or whether they are to be read in connection with the words, "Deponent avers that to his personal knowledge said committee had authorized and directed the issuance of said assessment."    In the former case we would have a notice stating, in substance, that the assessment was made by direction of the executive committee to pay death losses, etc., which would be a compliance with the statute requiring that the notice of assessment should state the cause and purpose of the same.    In the latter case we would have a notice of assessment, with an averment, by the person making affidavit, of the service of notice thereof, merely to the effect that the executive committee had authorized and directed the issuance of said assessment to pay death losses, etc., which would not be a compliance with the statute requiring the notice of and in itself to state the cause and purpose of the assessment.    I do not regard it as material, however, to decide whether the proof of service of notice of these assessments does show a compliance with the statute referred to.    The policies and certificates issued by defendant to plaintiff under their own provisions and under the rules applicable to them require certain notice of assessment to be given to a member of defendant before he can be placed in default for nonpayment, as defendant urges should be done in this case.    It was certainly necessary for defendant to comply with those provisions, and I do not think that has been done so as to enable it to declare plaintiff's policies lapsed.    Rule 3 of the rules governing the contracts and certificates between plaintiff and defendant provides, among other things:

"A notice shall be sent announcing each assessment and the number thereof to the last postoffice address given to the association by each member, and if the assessment is not received within thirty days from the mailing of said notice it shall be taken and accepted as sufficient evidence that the party has decided to terminate his contract with the association, which connection shall thereupon terminate," etc.

Under this rule it was necessary, therefore, that a notice of assessment which should be the basis of placing plaintiff in default and of allowing a forfeiture of his certificate or policy should, among other things, announce said assessment and the number thereof.    The notice proved in this case to have been sent made announcement of the assessment due upon each of plaintiff's policies, but did not give the number thereof, and therefore it seems to me to fail to so comply with the requisites provided by the contract of the parties

42 N.Y.S.—62

hereto as to be sufficient upon which to base the default and for-
feiture claimed by defendant. If it shall be said that the omission
to state the numbers of said assessments was an immaterial omis-
sion, and harmless in any way to plaintiff, it may be answered that
the purpose of defendant to place plaintiff in default upon the cer-
tificates issued to him after payment of $2,500 by way of premiums
and assessments is somewhat technical in its nature, and the plain-
tiff is entitled to insist upon a strict compliance by defendant with
all the prescribed prerequisites to placing him in such default; even
if some of them may be immaterial. The parties, by their contract,
had a right to determine just what acts should be performed by
defendant upon its part towards plaintiff, and just what effect should
follow from his omission to respond thereto; and, having done this,
it seems to be proper for the court to require, in a case like this,
a strict compliance by defendant with the terms of its contract before
declaring a forfeiture of plaintiff's rights.

I am inclined to think, however, that plaintiff's right to succeed
in this action, and to have his certificates or policies declared valid,
and to have himself reinstated or recognized as a member of de-
fendant, may be placed upon a broader ground than that above in-
dicated. As was suggested in the case of Dennis v. Association, 120
N. Y. 496–503, 24 N. E. 843, the contract involved in this case does
not provide in terms that failure to pay within 30 days shall work a
forfeiture, but that failure to pay shall be taken as sufficient evidence
of an intention to terminate the party's connection with the asso-
ciation, which connection shall thereupon terminate. It is such
intention coupled with the failure to pay which works the forfeiture.
Intention constitutes one of the essential elements of a forfeiture.
In this case there not only is no doubt about the mental purpose
of plaintiff to pay his assessments, but his acts actually performed
with the defendant must have conclusively indicated to it, not an
intention to terminate his connection with it, but, upon the other
hand, a purpose to discharge his obligations and continue his rela-
tions and rights with and in it. The facts seem to me to present a
stronger case in favor of plaintiff than would have been presented if
he had made an utter and entire default in paying or even at-
tempting to pay his assessments, however inadvertent such omission
might have been. In accordance with the well-established custom
which had grown up between the parties, and which was, therefore,
binding upon the defendant, plaintiff attempted to discharge his ob-
ligations by mailing it a check. There is no question of his inten-
tion to make such payment, and no question but what his account
at the bank upon which the check was drawn was good therefor, but
he omitted to sign his check. Conceded that this omission was an
important one so far as enforcement of the payment of the check
was concerned, still, should not a court of equity allow him to cor-
rect this inadvertent omission and make his check and payment
good as of the time when it was originally sent to defendant, if
necessary so to do to save him from an impending forfeiture of sub-
stantial rights? At any rate, I have no doubt but that, within the prin-

ciples laid down in Meyer v. Insurance Co., 73 N. Y. 516, 526, 527, the duty rested upon defendant of promptly returning to plaintiff his check or otherwise notifying him of his error, if it intended to make the latter the basis for enforcing a lapse.     I do not believe that, as claimed by plaintiff, it would have been incumbent upon defendant to resort to a telegram or other unusual means of notifying plaintiff of his mistake in order to enable him to correct it before February 1st.     But upon the evidence, undisputed by any witness in the case, plaintiff mailed his check to defendant January 30th. In the ordinary course of events it reached its destination early upon the morning of January 31st, and if returned by mail any time that day would have reached plaintiff early February 1st, and in time to have enabled him to transmit his dues to defendant that day if necessary.     Defendant, however, did not act promptly, but delayed for several days the return of the check, and it seems to me that plaintiff should not be prejudiced by such delay; that the prompt attempt which he made to pay his assessments and thus correct his inadvertence as soon as he was notified of it should just as much avail to prevent a forfeiture as though, defendant acting promptly, he had been enabled to do this within the original period fixed by service of the notice.

The purpose of a court of equity, when possible, to avoid or relieve from a forfeiture or default is too well settled to permit question or require discussion.     The undisputed features of this action—the nature of the contract made by plaintiff with defendant, when he was presumably in good health, to guard against the precise possibilities of sickness which now seems to have overtaken him; the entire fidelity with which for years down to the date in question he discharged his obligations to defendant for the purpose of insuring later performance by it of its obligations to him; the utterly unintentional and harmless character of his omission now complained of; the large amount of moneys paid to defendant by way of premiums and assessments, to be entirely lost and sacrificed if the lapse claimed by defendant shall be allowed—present a case which strongly appeals for the fullest exercise in behalf of plaintiff of those principles.     The views herein expressed seem to come well within their limits, and they lead to the decision of this case in favor of plaintiff, subject to his paying to defendant such unpaid premiums, assessments, and dues as have accrued.     Judgment for plaintiff.