THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. THE GRAND LODGE OF THE EMPIRE ORDER OF MUTUAL AID OF THE STATE OF NEW YORK, Respondent, and JANE DRAPER, Claimant, Appellant.

1. MUTUAL AID ASSOCIATION — INSOLVENCY — DEATH CLAIMS. The rights of the parties to a death claim upon the funds of an insolvent mutual aid association in the hands of a receiver, appointed in an action by the attorney-general for the dissolution of the association, are to be regarded as fixed as of the date of the commencement of the attorney-general's action.

2. RIGHTS MEASURED BY CONTRACT. The rights and liabilities of the parties to a death claim upon the funds of an insolvent mutual aid association in the hands of a receiver are measured by the contract created by the constitution, by-laws and certificate of membership, provided the same were authorized by law.

3. RECEIVER — NO PREFERENCE TO PARTICULAR CLAIM BY REASON OF PARTICULAR ASSESSMENT. When the whole scheme provided by the constitution and by-laws of a mutual aid association is that a fund should be created by assessments which, after it came into the possession of the association was to be appropriated generally to the payment of death losses, and not that any particular loss should be entitled to payment from the money which arose from any particular assessment, no death claim is entitled to a preference or lien upon funds in the hands of the receiver of the association, by reason of any particular assessment, even though the notice on which the assessment was made contained information of the death of the claimant's member, but there is no evidence to show that any part of such particular assessment ever reached the hands of the receiver.

*People* v. *Grand Lodge E. O. M. A.*, 88 Hun, 621, affirmed.

(Argued June 21, 1898; decided October 4, 1898.)

APPEAL from an order of the late General Term of the Supreme Court in the third judicial department, entered July 17, 1895, affirming an order of the Special Term, which confirmed the report of a referee appointed to take proof in this action as to the distribution of the assets of the defendant corporation.

The defendant was incorporated by chapter 189 of the Laws of 1879. One of the purposes of its incorporation, as stated in the act, was to aid, assist and support members or their families in case of want, sickness or death. It was authorized to create, manage and disburse a beneficiary fund for the relief of its members, under and in pursuance of such rules and by-laws as it might adopt, not in conflict with the laws of the state, and to employ such fund in paying death losses in the manner provided by its constitution and by-laws, and to such person as the deceased member might, while living, direct. Under this authority it adopted a constitution and by-laws for the regulation and government of its affairs. The powers conferred upon it by statute were exercised by a grand lodge, which was composed of representatives of subordinate lodges and the officers of the former. Under its rules and regulations the sole power of making other rules and regulations for its government rested in the grand lodge.

It had no stock, but its funds were derived from fees, charges and assessments upon its members. The funds thus obtained were of two classes: One known as the "mutual aid fund," which was obtained solely by assessments upon members of the order, to be used only for the payment of approved and allowed death claims; the other was known as the "general fund," which was derived from a tax upon the members, membership fees and incidental charges, and was used to defray ordinary expenses.

Upon joining the order a member was required to pay into the treasury the sum of one dollar for a full-rate membership, which entitled his beneficiary to two thousand dollars in case of death, or fifty cents for a half-rate membership, which would, upon his death, entitle him to receive only one-half of

the sum named.   The money thus paid was to meet the first assessment to which the person paying it should become liable. His liability to assessment and tax ran from the date of his initiation.

There was issued to each member a certificate which provided that a member should participate in the mutual aid fund in case of his death to the extent of two thousand dollars if a full-rate member, or one thousand dollars if a half-rate member, to be paid to the beneficiary mentioned in the certificate, upon due notice of the member's death and the surrender of the certificate properly receipted, provided he was in good standing at the time of his death.

The constitution and by-laws made it the duty of the officers of the grand lodge to make the assessments and receive the money paid or collected thereon, which were to constitute the mutual aid fund for the payment of death claims, and it was also their duty to pay such claims from the treasury of that body.   Each subordinate lodge was required to keep in its treasury, subject to the order of the officers of the grand lodge, the amount of one assessment.   There were two notices of assessment provided for, one to the subordinate lodge, requiring it to forward the advance assessment in its hands, and to assess its members for the amount necessary to pay all death losses mentioned in the notice and leave one assessment in its treasury, and the other was to the members of the order personally.   These notices were issued by one of the general officers of the grand lodge.

On the first of January, 1892, there was in the treasury of the defendant to the credit of the mutual aid fund the sum of $3,708.29, and there were at the time outstanding and unpaid approved death claims to the amount of $26,000, which were paid before the commencement of this action.

This action was commenced by the attorney-general for the dissolution of the defendant, for the forfeiture of its rights and franchises, and to obtain a just and fair distribution of its property among its creditors.   A temporary receiver was duly appointed on May 26, 1892, and subsequently and on Novem-

ber 28, 1892, George W. Maxon was made permanent receiver of the defendant and its property, who thereupon duly qualified, entered upon his duties, and has since acted as such receiver. The funds now in his hands for distribution among the claimants amount to the sum of about seventeen thousand dollars, while the claims established before the referee appointed to take proof and report as to the distribution of the assets of this corporation amount to about one hundred thousand dollars.

Upon the trial before the referee the appellant presented a . claim upon a certificate issued to Richard H. Draper and payable to her, which was passed upon and allowed to be paid *pro rata* with the other claims which were established before him. Draper died at Buffalo December 10, 1891. At that time he was a member of the defendant company in good standing. Subsequently due proofs of his death were filed with the proper officers, and the death claim was duly approved and allowed. Thereupon an assessment was made and notice thereof issued by the grand lodge, which contained a statement of his death and of the resulting loss. The appellant insists that she was entitled to the proceeds of that particular assessment, so far as it was based upon the death of her husband, and it not having been paid, that, upon the dissolution of the corporation, the sum of two thousand dollars due upon her certificate became and is a lien upon the funds now in the hands of the receiver, and that she is to that extent entitled to a preference, and to have her claim paid in full out of the assets in his hands.

*Edward L. Jellinek* for appellant. The rights of the appellant must be governed by the act of incorporation, constitution and general laws of the order, and the certificate or policy of insurance issued by the grand lodge. (*Matter of E. R. F. L. Assn.*, 131 N. Y. 369; *Wadsworth* v. *J. & T. Co.*, 132 N. Y. 542.) The appellant is entitled to a preference among the death claims to the extent of the proceeds of the assessment levied on account of her husband's death. (*Darrow* v. *F. F. Society*, 116 N. Y. 541; *O'Brien* v. *H. B. Society*, 117 N.

Y. 318; *Stamm* v. *Mutual B. Assn.*, 65 Mich. 319; *In re Protection L. Ins. Co.*, 9 Bissell, 188; *Burdon* v. *Mass. S. F. Assn.*, 146 Mass. 367; *Smith* v. *Cov. M. B. Assn.*, 24 Fed. Rep. 689; *Bailey* v. *Mutual B. Assn.*, 71 Iowa, 689; *Matter of E. R. F. L. Assn.*, 131 N. Y. 354; *Wadsworth* v. *J. & T. Co.*, 26 J. & S. 88; 132 N. Y. 540; *People* v. *S. L. Ins. & An. Co.*, 78 N. Y. 114–128.) If this court affirm the order of the General Term, costs should not be imposed, but the appellant should be allowed her costs out of the fund in the hands of the receiver. (Code Civ. Pro. § 3240; *Barnes* v. *Newcomb*, 89 N. Y. 108; *Matter of I. & G. Exchange*, 28 N. Y. S. R. 420.)

*Charles W. Mead* for the receiver, respondent. The moneys paid into the defendant by the members belonged to the corporation, unimpressed with any trust, and were subject to its disposal solely. The death claimants are mere creditors of the corporation, having no lien, legal or equitable, upon the funds of the corporation. (*People* v. *S. L. Ins. & An. Co.*, 78 N. Y. 114–128; *Fisher* v. *Andrews*, 37 Hun, 176–180; *Matter of E. R. F. L. Assn.*, 131 N. Y. 354, 379; *People ex rel.* v. *L. & R. Assn.*, 150 N. Y. 94, 116.)

Martin, J. The rights of the parties to this controversy are to be regarded as fixed as of the date of the commencement of this action. (*Matter of E. R. F. L. Assn.*, 131 N. Y. 354, 369; *People ex rel.* v. *Life & R. Assn.*, 150 N. Y. 108; *People* v. *Commercial Alliance L. Ins. Co.*, 154 N. Y. 95.) It is practically admitted that their rights are to be governed by the constitution and by-laws of the defendant and its certificate of membership. This court has several times held in similar cases that the constitution, by-laws and certificate, when authorized by law, form the contract upon which the rights of the parties rest. (*Matter of E. R. F. L. Assn.*, 131 N. Y. 354, 369; *Wadsworth* v. *Jewelers and Tradesmen's Co.*, 132 N. Y. 540; *People ex rel.* v. *Life & Reserve Assn.*, 150 N. Y. 94.)

Therefore, the rights of the parties to this litigation are not controlled by the general rules of equity which regulate the distribution of the funds of an insolvent estate, but the contract of the parties is the measure of their rights and liabilities.

The particular question involved upon this appeal is whether, under the contract, the appellant is entitled to the lien or preference claimed. Upon an examination of the constitution and by-laws it is found that a fund was to be created by the defendant, known as the mutual aid fund, out of which all death losses which were allowed and approved were to be paid. This fund was derived from assessments upon members of the order. To the amount of one assessment, it was to be collected before any death claim arose, so that to that extent it was a fund collected in advance and retained for the purpose of paying death losses. If there was one death claim, it was paid from the existing fund, if sufficient, and an assessment was made to replenish it. If there was more than one loss, the officers of the defendant were required to make as many assessments as there were death claims. In this manner the defendant was to create and maintain the mutual aid fund, and when thus accumulated it was to be employed in the payment of all unpaid approved death claims. Thus we see that no particular part of this fund was dedicated to the payment of any special claim. The fund, as a whole, was the source from which all death claims were to be paid in their proper order. If the proceeds obtained from one assessment, with the unexpended portion of the fund on hand, should prove insufficient to pay all approved death claims existing at the time, the excess of the unpaid claims could not be paid until another assessment was made. That the amount to be paid upon each death claim was definite, while the amount to be received from assessments was uncertain and varying, depending upon the membership for its sufficiency, renders it quite obvious that no particular assessment could be regarded as dedicated to the payment of any particular claim. If the amount received upon one assessment was insufficient to pay the claim of a beneficiary, he would not be required to

accept the amount collected in satisfaction of his claim.  On the other hand, if the amount of the assessment exceeded the amount of the claim, it is evident that the excess would not belong to the claimant, although the notice might have mentioned the death of the deceased member as the occasion for the assessment.

Under this contract the beneficiary of a member upon the death of the latter was to be paid, not the amount realized upon any particular assessment, but he was entitled to participate in the mutual aid fund, and a sum certain was to be paid him therefrom.  These provisions clearly negative the idea that the proceeds of an assessment were to inure to the special benefit of the member named in the notice.  That deceased members were named in a notice imports nothing except the death of members who were entitled to participate in the fund, and merely discloses a reason for making the assessment.  It is true that, upon the death of a member, the by-laws required his name to be placed upon the next assessment notice if he was in good standing at the time.  Obviously, that was for the purpose of enabling the members of the association and its officers to protect the company against fraud by making improper assessments.

The by-laws expressly provided that the funds collected by assessment should be immediately deposited to the credit of the mutual aid fund and drawn upon solely for the payment of approved and allowed death claims, thus plainly indicating that they were to become a part of the fund out of which all death losses were to be paid.  The whole scheme and plan provided by the constitution and by-laws was that a fund should be created by assessments which, after it came into the possession of the defendant, was to be appropriated generally to the payment of death losses, and not that any member should become entitled to receive his claim from the money which arose from any particular assessment.  In other words, the defendant became indebted to the beneficiary of a deceased member, which debt, with similar debts of others, was to be discharged from the fund thus created.   Thus it becomes

obvious that the appellant's claim that she had a preference or lien upon the funds in the hands of the receiver, cannot be maintained.

Moreover, there is no evidence in the record to show that any part of the assessment collected in pursuance of the notice which contained information of the death of the appellant's husband ever reached the hands of the receiver.   On the contrary, it tends to show that the money thus collected had been paid out, before a receiver was appointed, to the beneficiaries of other members whose deaths had previously occurred.   In the case of *People ex rel.* v. *Life & Reserve Assn.* (150 N. Y. 94, 116) a similar question was involved.   In that case it was claimed that an assessment had been made in pursuance of a notice which included the name of the decedent under whom the appellant claimed, and she insisted that under those circumstances a fund was established which was expressly dedicated to the payment of the certificate held by her; that a trust was created, and the funds collected were impressed therewith to an extent which entitled her to payment out of the funds in the hands of the receiver.   Thus, the claim in that case was practically identical with the claim which is made by the appellant in this    But in that case this court held that as no portion of the money collected by that assessment reached the hands of the receiver, no such trust or preference existed in favor of the claimant.

We think the principle of that case is decisive of the question under consideration, and that the courts below have properly decided that the appellant had no such preference or lien as is claimed, but that the fund in the hands of the receiver should be divided *pro rata* among all the creditors, whose claims have been established.

We think the order appealed from was right and should be affirmed, with costs payable out of the funds in the hands of the receiver.

All concur.

Order affirmed.