(40 App. Div. 581.)

### McNEIL v. SOUTHERN TIER MASONIC RELIEF ASS'N.

(Supreme Court, Appellate Division, Third Department.    May 9, 1899.)

1. MUTUAL ASSESSMENT INSURANCE — DEFAULTED MEMBERS — RIGHT TO REINSTATEMENT.

   A by-law of a mutual assessment company, providing for suspension from membership for nonpayment of assessments, and authorizing the directors to reinstate defaulted members on their giving a satisfactory excuse for the default, does not make the reinstatement of defaulted members optional with the directors, but they are bound to reinstate them on the production of a satisfactory excuse.

2. SAME—EXCUSE FOR DEFAULT—SUFFICIENCY.

   The insanity of a member of a company at the time of levying an assessment is a valid excuse for its nonpayment, entitling him to reinstatement, where the beneficiary, as soon as he learned of the assessment, informed the company of the member's condition, and offered to pay the assessment.

3. SAME—RETROACTIVE BY-LAWS—VALIDITY.

   Where neither the certificates of membership of a mutual assessment company, nor the articles and by-laws in force at the time of their issuance, reserve the right to make amendments so as to affect existing memberships, an amendment of a by-law entitling defaulted members to reinstatement on furnishing a satisfactory excuse for the default, by requiring them also to furnish satisfactory evidence of good health, does not apply to memberships in existence at its adoption.

4. SAME—CERTIFICATE OF MEMBERSHIP—AMOUNT OF RECOVERY.

   A by-law of a mutual assessment insurance company providing that, on the death of a member, his beneficiary shall receive a stated sum for every member of the association, limits a recovery to such sum for every member, though the certificate of the deceased stated that it was issued for a definite sum.

   Parker, P. J., dissenting.

Appeal from trial term, Clinton county.

Action by Charles H. McNeil against the Southern Tier Masonic Relief Association. There was a judgment for plaintiff, and defendant appeals. Affirmed on conditions.

The defendant was incorporated on the 9th day of October, 1869, and since that time has been engaged in the business of life insurance upon the cooperative or assessment plan. David B. McNeil became a member of the association on the 19th day of October, 1874, and at that time the usual certificate of membership was issued to him; the amount thereof being stated at $2,000, payable to Laura E. McNeil, his wife. Thereafter, on the death of his wife, the insured surrendered the certificate, and received from the defendant a new one, dated April 7, 1884, in favor of his daughter, Louisa W. Beardsley; and on the 20th day of October, 1884, on the death of the said Louisa, surrendered the last-named certificate, and received the certificate set out in the complaint, of which the following is a copy:

"Southern Tier Masonic Relief Association, Elmira, N. Y.

"No. 53.    ·                                        Amount, $2,000.

"This is to certify that Brother David B. McNeil, of Auburn, N. Y., is a member of the Southern Tier Masonic Relief Association of the State of New York,

and is entitled to all its rights, privileges, and benefits, and subject to the laws, rules, and regulations governing said association.

"In favor of Charles H. McNeil (brother). [L. S.]

"In testimony whereof, the president and secretary have hereunto set their hands, and affixed the seal of the association,.at Elmira, N. Y., this 20th day of October, A. D. 1884.                      Hy. B. Berry, Secretary.
"C. N. Shipman, President."

The by-laws in force in 1874, when the first certificate was issued to the deceased, and subsequent by-laws adopted by the corporation prior to those of January, 1892, were substantially alike in regard to the effect of the nonpayment of assessments by a member. Those of 1872 provided that on the death of a member the secretary should notify each surviving member of such death, and of the sum payable by him on account thereof, and "each surviving member shall, within 15 days after the date of such notification, pay to the secretary the sum of one dollar; and, in case he shall neglect to pay the same within 15 days, he shall be again notified by the secretary, and, if said sum shall not be paid within 15 days after the date of such second notice, his name shall be erased from the roll of members, and he shall forfeit all claim upon the association: provided, however, that the board of directors shall have power to restore such delinquent member, upon his giving, personally or in writing, a satisfactory excuse for his default, and paying all assessments which may have occurred up to the date of such restoration." Those of 1878 contained the following provision: "And, if said sum shall not be paid within thirty days after the date of such notice, such member shall forfeit all claims upon the association, in accordance with the certificate of incorporation. The secretary shall report to the board of directors, at any regular or special meeting of said board, the names of all persons who have forfeited their membership by nonpayment of dues, and the board of directors shall, by a majority vote, pronounce a sentence of forfeiture: provided, however, that the board of directors shall have power to restore such delinquent member upon his giving, personally or in writing, a satisfactory excuse for his default, and paying all assessments which may have occurred up to the date of such restoration."

It was shown that from 1874 to January 10, 1896,—a period of about 22 years,—David B. McNeil had paid all the assessments levied upon him under the various by-laws as they existed at the time of such assessments; but on the 1st day of January, 1896, he became insane, and remained in that condition until his death, on the 15th day of April, 1897. While he was in that condition, on the 10th day of January, 1896, the defendant sent a notice by mail, in due form, requiring him to pay an assessment of seven dollars within 30 days. This assessment was not paid. On the 6th day of July thereafter, the plaintiff, the beneficiary named in said certificate, sent a letter to the defendant, stating that he was ready to pay the assessment of January 10th, and any other assessments since that period. This offer, it was admitted, was made at the earliest possible moment after the plaintiff learned of the default of the payment of the assessment in question, and that he at the time advised the company of the condition of the insured. To this offer the defendant returned the following reply:

"Elmira, N. Y., July 3, 1896.

"Mr. Charles H. McNeil, Plattsburg, N. Y. Dear Sir: I have your favor of July 1st. D. B. McNeil was suspended from membership in this association for nonpayment of assessment 163, due February 10, 1896. As he is over 55 years of age, it will be impossible to restore him.

"Very truly,                          E. O. Beers, Secretary."

This action was brought on the contract of insurance thus entered into between the defendant and David B. McNeil, in which the plaintiff was named as the last beneficiary. The corporation defended on the ground that because of the failure of the assured to pay the assessment of January 10, 1896, in consequence of his insanity, he forfeited his membership in the association, with all rights under the said certificate.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Reynolds, Stanchfield & Collin (Frederick Collin, of counsel), for appellant.

Wheeler & Woodward (S. L. Wheeler, of counsel), for respondent.

PUTNAM, J.   When the certificate of membership was issued by the defendant to David B. McNeil, the contract of insurance between the parties was formed by said certificate and the charter and by-laws of the defendant then in force.   People v. Grand Lodge of Empire Order of Mut. Aid, 156 N. Y. 533–537, 51 N. E. 299.   Those by-laws provided, among other things, in substance, that if the assured should fail to pay an assessment, after due notice thereof, within a time mentioned, he should forfeit all rights upon the association, but that the board of directors should have power to restore a delinquent member on his giving, personally or in writing, a satisfactory excuse for his default, and paying all dues and assessments to that date.   The provisions thus referred to entered into the contract made between the parties; and as the subsequent by-laws adopted by the defendant prior to January 11, 1892, contained no substantial change as to the effect of a nonpayment of an assessment by a member of the association, or the procedure to be adopted in such a case, they continued in the contract at least from October 19, 1874, until the change made in the by-laws on January 11, 1892.   In the case of Dennis v. Association, 120 N. Y. 496, 24 N. E. 843, an action to recover on a contract of insurance containing similar provisions in regard to the effect of the nonpayment of an assessment, it was held "that defendant's contract must be construed as an agreement on its part to accept a valid (i. e. a sufficient or satisfactory) excuse for nonpayment, and thereafter continue the policy in force; that the question as to the validity of the excuse was not left exclusively to the determination of defendant's officers, but, where such an excuse existed, they were bound to be satisfied therewith; that the facts showed a valid excuse; and that the death of D. did not alter defendant's contract obligations, but the legal right to reinstatement passed to the beneficiary under the policy."   In the case cited a notice of assessment was made to the insured on February 15th.   On March 8th he was stricken with apoplexy, and became unconscious; remaining in that condition until March 19th, when he died.   It was held that his condition was a valid excuse for the nonpayment of the premium, and should have been accepted by the defendant, and that the plaintiff was entitled to recover.  Under the doctrine stated in that case, it cannot be doubted that, if the by-laws in force when the contract between the defendant and the deceased was made continued to enter into the contract under which the plaintiff claims at the time of the death of David B. McNeil, the plaintiff was entitled to recover.   The excuse for the nonpayment of the assessment was as good and valid as that rendered in the authority cited.   The deceased, when the assessment of January 10, 1896, was made, was insane, and continued in that condition up to the date of his death.   The beneficiary, as soon as he ascertained that an assessment had been made, notified the defendant of the condition of the deceased, and offered to pay the assessment.   No objection was made to the manner of notification, or proof required as to the in-

sanity of the insured, or in regard to his condition of health; the defendant absolutely declining to reinstate him, on the ground, simply, that he was over 55 years of age. In the year 1892, and also in 1893, the defendant adopted new by-laws, by which, in substance, it was provided that if a member, after due notice, failed to pay an assessment within 30 days, the certificate of membership should be null and void. But power was given to the executive committee of the defendant to reinstate a delinquent member at any time within 1 year, for good cause shown, and upon satisfactory evidence of good health. The deceased, after he had failed to pay the assessment of January 10, 1896, being insane, it was not possible to produce satisfactory evidence of good health. Insanity is a mental disease, and also implies disease or congenital defect in the brain. 1 Rawle's Bouv. Dict. 1051. Within the meaning of the insurance contract, one insane cannot be deemed in good health. If, therefore, the contract between the parties can be deemed changed by the by-laws adopted in 1893—which appear to have been in force at the time of the death of the insured—in reference to nonpayment of assessments, the recovery cannot be sustained. Dennis v. Association, 120 N. Y. 501, 24 N. E. 843; Wheeler v. Insurance Co., 82 N. Y. 543. The insanity of the deceased did not·excuse his nonpayment of the assessment, and satisfactory proof that he was in good health was not, and could not be, produced. But under the contract entered into between the parties, which had been in existence for over 17 years before the by-laws as to the effect of the nonpayment of an assessment had been substantially changed, as that contract must have been construed in Dennis v. Association, supra, the plaintiff, having furnished a satisfactory excuse for the nonpayment of the assessment of January 10, 1896, was entitled to maintain this action.

Did the adoption of the by-laws of 1892 and 1893 by the defendant have the effect of changing the contract as then existing between the parties, and, after such adoption, did those by-laws become and form a part of the contract, instead of those existing when the certificate was issued? It will be noticed that, by the certificate, David B. McNeil became a member of the association, "entitled to all its rights, privileges, and benefits, and subject to the laws, rules, and regulations governing said association." The certificate did not provide that the deceased should be subject to the rules and regulations thereafter enacted, and the by-laws then existing, while providing the procedure by which they might be amended, contained no provision empowering the corporation to amend its by-laws so as to affect existing contracts. There was no express reservation of the right to amend the by-laws. The contract, by its terms, did not confer upon the corporation a right to change its provisions by the enactment of a new by-law.· But the defendant undoubtedly possessed the same powers that all such corporations possess,—to make reasonable by-laws and reasonable amendments thereto. If the by-laws of 1892 and 1893 as to the effect of the nonpayment of an assessment by the insured, on their adoption, took the place of those existing when the contract was made, and became a part of the contract, they effected a material change therein. When the certificate was issued, and until 1892, the membership of the in-

sured could not be forfeited on the ground of his omission to pay an assessment, if he had a satisfactory excuse therefor.    Under the by-laws adopted in 1892 and 1893, the failure of the insured to pay an assessment worked a forfeiture of his interest in the association, and he could only be reinstated on satisfactory evidence of good health, no matter what excuse he rendered.    It was provided by the by-laws of 1893 that service of a notice of assessment by mail should constitute conclusive proof of due notice to a member, so that, in case of such service by mail, and a failure of a member to receive it, he could not be reinstated, if not in good health.    In the case under consideration, the insured was insane when the assessment was made; incapable of transacting business; irresponsible for his actions.    He was practically in the same situation as one to whom a notice had been sent by mail, and who had not received it.    Although the deceased had a most satisfactory excuse for his failure to pay the assessment, under the by-laws of 1892 and 1893 the executive committee of the defendant not only could not be compelled to accept his excuse, but had no power to receive it.    These by-laws, if valid as against the deceased, gave to the defendant a power to forfeit his membership, which it did not possess before.    Under those existing when the contract was entered into, the plaintiff, as the beneficiary named in the certificate, was entitled to recover.    If the by-laws of 1892 and 1893 had the effect of changing the contract, the plaintiff's claim thereunder ceased.    We are of the opinion that the by-laws of 1892 and 1893, while valid as to subsequent contracts, did not affect that under which the plaintiff claimed in this action.    In 5 Am. & Eng. Enc. Law (2d Ed.) 96, it is said:

"A corporation has not the power, by laws of its own enactment, to disturb or devest rights which it has created, or to impair the obligation of its contracts, or to change its responsibilities to its members, or to draw them into new and distinct relations; and all by-laws attempting to do this are inoperative and void."

In the opinion in Illinois Conference Female College v. Cooper, 25 Ill. 133–137, the following language was used:

"A corporation has no power to invade the rights of an individual by a by-law, nor in that way operate upon or affect injuriously the rights of others. They can contract and be contracted with, and are as much bound by their contracts as natural persons, and cannot, without the consent of the other contracting party, impose terms and conditions, before they will perform their contract, not embraced in the contract itself."

See, also, Becker v. Insurance Co., 48 Mich. 610, 12 N. W. 874; 3 Am. & Eng. Enc. Law (2d Ed.) 1084; Kent v. Mining Co., 78 N. Y. 159; Matthews v. Associated Press of State of New York, 136 N. Y. 333–342, 32 N. E. 981.

A corporation may, however, make rules and regulations not affecting a contract in substance,—in other words, reasonable by-laws. But a by-law that will destroy a vested right is not such.    Kent v. Mining Co., 78 N. Y. 183; Weiler v. Equitable Aid Union, 92 Hun, 277, 36 N. Y. Supp. 734; People v. Medical Soc. of Erie Co., 24 Barb. 570; Hobbs v. Association, 82 Iowa, 107, 47 N. W. 983; Morrison v. Insurance Co., 59 Wis. 162, 18 N. W. 13.    The true doctrine, we think, is that a by-law of such an association, that would have the

effect of materially changing or impairing the obligation of an existing contract, cannot be given a retroactive effect. If it is attempted to give it such a retroactive effect, the by-law is unreasonable,—especially in cases where, by the terms of a contract of insurance entered into by such a corporation, no right to amend its by-laws is expressly reserved. It cannot be doubted but that the change in the defendant's by-laws in 1892 and 1893 in reference to the effect of the nonpayment of the assessment of a member was a most material one, and, if it could be held to enter into the contract of the parties, effected a material alteration therein. We conclude that the by-laws adopted 'by the defendant in 1892 and 1893 were inoperative, as against the deceased, and did not have the effect of impairing the obligation of the contract existing between the parties. The defendant could not by a subsequent by-law affect a vested right, or make a new agreement with the deceased, or impair his rights under a contract which had existed for over 17 years. It follows that the plaintiff was entitled to recover, under the principles laid down in Dennis v. Association, supra.

But, although the plaintiff was entitled to recover in the action, we are unable to determine that a recovery for $2,000 and interest can be sustained, under the evidence introduced by the parties on the trial. The by-laws of 1878, which the plaintiff introduced in evidence, contained the following provision in regard to the payment of death claims:

"Upon the death of any member of this association, the sum to be paid to the representative of the deceased member, as designated upon the books of the association, shall be $1.00 for every member of the association, not exceeding two thousand members."

Those of 1872 contained a similar provision.

There being no testimony contained in the case showing the number of members of the corporation at the time of the death of David B. McNeil, the judgment for $2,000 and interest was unsupported by the evidence. J. Maxwell Beers, a witness produced by the defendant, however, testified that, if the membership of the deceased had not lapsed, the plaintiff would have been entitled to recover the sum of $894.68, under the by-laws of the defendant. This testimony, we think, permitted a recovery of the plaintiff for that sum, and interest from the 15th day of 'October, 1897.

Our conclusion is that the judgment should be reversed, and a new trial granted, costs to abide the event, unless the plaintiff stipulates, within 30 days after the entry of the order herein, to reduce the recovery to the amount above stated. If the plaintiff makes such stipulation, the judgment, as modified, should be affirmed, without costs to either party in this court. All concur, except PARKER, P. J., dissenting.